JAMES McMANIS (40958)
CHRISTINE PEEK (234573)
ANDREW PARKHURST (324173)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244
Email:          cpeek@mcmanislaw.com

Attorneys for Plaintiff,
KYLE JOHNSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Kyle Johnson, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>City of San Jose, a California charter city; Does 1 through 50,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1.      On May 25, 2020, Minneapolis police officer Derek Chauvin killed George Floyd, a Black man, by kneeling on Mr. Floyd's neck for over nine (9) minutes,[1] while fellow officers held Mr. Floyd down and prevented others from rescuing him.  Public outrage over this act of police brutality inspired millions of Americans nationwide to march against the disproportionate use of deadly force by law enforcement against Black people.  Alongside many others, plaintiff, Kyle Johnson ("plaintiff" or "Mr. Johnson") participated in the George Floyd protests on Saturday, May 30, 2020, in San Jose, California.  In addition to the horrifying circumstances of Mr. Floyd's unjustifiable killing, the actions of Mr. Johnson's grandmother, who participated in the "Bloody Sunday" march from Selma in 1965, inspired him to make his voice heard.

2.      The San Jose Police Department ("SJPD") responded to the George Floyd civil rights demonstrations with excessive force.  Throughout the demonstrations, and including on May 30, 2020, the SJPD made liberal use of projectile impact weapons ("PIWs" or "less lethal firearms") against individuals who posed no threat but advocated a political viewpoint that is expressly disagreed with by some members of the SJPD.  This lawsuit is to redress injuries Mr. Johnson sustained from the SJPD's unreasonable and excessive use of less lethal firearms against nonviolent protesters on May 30, 2020.

# JURISDICTION AND VENUE

3.      This action arises under 42 U.S.C. § 1983, the Constitution of the United States, the Constitution of the State of California, and California state law.  The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a).

4.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the action arises therein, and a substantial part of the events giving rise to this action occurred therein.

---

[1] Haley Willis, et al., *New Footage Shows Delayed Medical Response to George Floyd*, N.Y. TIMES, Aug. 11, 2020 (updated Jan. 6, 2021), https://www.nytimes.com/2020/08/11/us/george-floyd-body-cam-full-video.html.

**INTRADISTRICT ASSIGNMENT**

5.      Assignment of this action to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e), because a substantial part of the events giving rise to the claims alleged herein occurred in the County of Santa Clara.

**PARTIES**

6.      Plaintiff Kyle Johnson ("Mr. Johnson" or "plaintiff") is, and at all times herein mentioned was, an individual residing in the County of Santa Clara, State of California.

7.      Defendant City of San Jose ("City") is, and at all times herein mentioned was, a public entity and charter city located in the County of Santa Clara, State of California.  At all relevant times, the City and its policymakers are and were responsible for the policies, procedures, practices, and customs of the City's various agents and agencies, including but not limited to, the SJPD.  At all relevant times, the City and its policymakers had the power and authority to adopt policies and prescribe rules and regulations affecting the operation of the SJPD and its tactics, methods, practices, customs, and usage.  At all relevant times, the City is and was responsible for assuring that the actions, omissions, policies, procedures, tactics, methods, practices, and customs of the SJPD, its employees and agents, and any law enforcement officers who provided the City with mutual aid, including Does 1 through 50, complied with the laws of the State of California and the laws of the United States.

8.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-50, inclusive, and therefore sues these defendants by such fictitious names.  They are sued in their individual capacities, and any reference in this complaint to "defendants" also refers to Does 1-50.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the acts, omissions, injuries, and damages herein alleged.  Although plaintiff made good faith efforts to learn the identities of Does 1-50 by seeking information from the City under the California Public Records Act ("CPRA"), which the City must disclose under the law, to date, the City has refused to provide all responsive information.  Plaintiff is informed and believes, and thereon alleges, that the City has a de facto

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

1  policy, pattern, and practice of refusing to timely release information that must be disclosed to

2  members of the public under the CPRA, which has the effect of obstructing individuals such as

3  plaintiff from pursuing redress for harm and injuries caused by the City and its officials, agents,

4  and employees.

5       9.    SJPD officers whose names are unknown to plaintiff, and who are therefore sued

6  as Does, are employed by the City.  At all times mentioned herein, defendants, including Does 1-

7  50, inclusive, were employed by the City and acting within the course and scope of their

8  employment, or in the alternative, were employed by another law enforcement agency while they

9  were providing mutual aid to the SJPD.

10       10.   At all times herein mentioned, defendants, including those sued herein as Does 1

11  through 50, were the agents, servants, and employees of their co-defendants and in doing the

12  things herein alleged were acting in the scope of their authority as such agents, servants and

13  employees, under the direction and supervision and with the permission and consent of their co-

14  defendants.  At all times herein mentioned, defendants, including those sued herein as Does 1

15  through 50, provided each other with armed backup and aided, incited, or conspired in the denial

16  of plaintiff's constitutional rights, and plaintiff's rights under California Civil Code sections 51.7

17  and 52.1.

18  **GENERAL ALLEGATIONS**

19       11.   On May 30, 2020, between approximately 9:30 p.m. and 11:00 p.m., Mr. Johnson

20  was exercising his First Amendment rights in front of City Hall, by participating in one of the

21  hundreds of civil rights demonstrations that occurred across the United States in response to the

22  killing of George Floyd by Minneapolis police officers on May 25, 2020.

23       12.   No curfew was in place in the City on May 30, 2020.

24       13.   During the relevant time period, Mr. Johnson was located near the planters lining

25  the sidewalk of East Santa Clara Street in front of the City Hall plaza.

26       14.   The SJPD and the law enforcement officers who provided mutual aid to the City

27  responded to the George Floyd police brutality protests with their own show of excessive force

28  directed against the civil rights demonstrators.  Officers lining East Santa Clara Street opposite

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

Mr. Johnson began to deploy weapons, including but not limited to, less lethal firearms, after another member of the crowd threw a plastic water bottle up in the air (which landed on the ground without harming any officer).  In an attempt to flee from the officers' use of their weapons on the crowd, Mr. Johnson ran perpendicular from the officers and towards City Hall. He heard a noise that sounded like compressed air and what he believed to be a projectile shooting out of a gun.  Mr. Johnson then felt the officer-fired projectile hit the back of his leg, which left a large circular-shaped injury.  Mr. Johnson was in the City Hall plaza when he was struck.

15.     After he was hit, Mr. Johnson hobbled out of the line of fire towards the City Hall building, until he felt safe enough to limp away from the area of the demonstrations.

16.     As he was limping away, Mr. Johnson heard tear gas being deployed, and then an announcement that the gathering was unlawful.  At no point before Mr. Johnson was hit did he hear any order to disperse, or any declaration that the assembly was allegedly unlawful.

17.     At all relevant times, Mr. Johnson exercised his First Amendment rights in a peaceful manner, did not pose a threat to the officers or anyone else, and did not engage in any illegal activity.  No reasonable officer would interpret Mr. Johnson's speech or actions on May 30 to be threatening to anyone.  Mr. Johnson was never charged with any crime in connection with his exercise of his First Amendment rights on May 30, 2020.

18.     The impact of the projectile caused a large circular mark and severe bruising to form on Mr. Johnson's leg, resulting in the formation of a blood clot, which required multiple trips to the emergency room and a sustained course of follow-up treatment, including medication.  As a result of his injuries, Mr. Johnson's risk of blood clots increased, and he continues to suffer from blood clots.  He recently had to return to the hospital, and anticipates he will have to continue taking medication to counteract the blood clots for the rest of his life.

19.     Before he was hit, Mr. Johnson was an active, athletic person who taught physical education and coached sports.  As a result of the unlawful and unnecessary use of excessive force, Mr. Johnson's mobility was seriously impaired, and he was unable to walk or exercise normally for approximately three (3) months following the incident.  Mr. Johnson continues to

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

experience pain and reduced mobility in connection with the blood clots.

20.    As a result of his injuries, Mr. Johnson experienced severe physical pain, and the mental and emotional distress that would normally flow from the experience of being shot in the course of protesting the use of deadly force by law enforcement against Black people, and learning the injuries were serious and would require a sustained course of treatment.  The intentional use of excessive force by the SJPD and other law enforcement officers providing mutual aid was sufficient to deter Mr. Johnson and any ordinary person from exercising their First Amendment rights to protest deadly force by law enforcement and its disproportionate use against Black people.

21.    Plaintiff is informed and believes, and thereon alleges, that as of May 30, 2020, crowd control training for SJPD officers had been minimal and infrequent.  In particular, plaintiff is informed and believes, and thereon alleges, that training on the use of, and the constitutionality of using, less lethal firearms against peaceful demonstrators was minimal and infrequent. Plaintiff is informed and believes, and thereon alleges, that the SJPD conducted no ongoing training for patrol officers regarding the 40mm launchers used against the George Floyd civil rights demonstrators.  Because training in firearms, including less lethal firearms, is a perishable skill, the infrequency of the training is significant.  Plaintiff is informed and believes, and thereon alleges, that the SJPD did not provide regular trainings to officers and command staff on crowd control, in part because such mass trainings require time away from already depleted patrol staffing.  In spite of this, the SJPD allowed untrained officers to be equipped with less-lethal firearms during the George Floyd civil rights demonstrations.  On information and belief, Does 1-50 did not have adequate training on legally permissible uses of less lethal firearms in a crowd control context for at least the last five years.

22.    To the extent training was provided, it was constitutionally inadequate.  For example, a slide deck for a training on Projectile Impact Weapons given by SJPD Sergeant Christopher Sciba, a Sergeant with the SJPD Training Unit, states that such munitions may be used for "Riot/Crowd Control," but fails to provide any guidance about the circumstances under which use in that specific context would be constitutional or in compliance with SJPD policy.

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

The slides fail to provide such guidance despite acknowledging, "[i]njury should be expected," and depicting shots to the chest, spine, head, and neck as "lethal force" in a graphic on one of the slides.  The final slide in the presentation tells trainees to "not hesitate," and to "[a]lways win." Such words fail to discourage the escalation of force in any given police encounter.

23.    On information and belief, the failure to provide adequate training on crowd control and less lethal firearms resulted in the SJPD officers' inappropriate use of PIWs against individuals who posed no threat to anyone, causing injury to Mr. Johnson and others.  Such failure to train amounts to deliberate indifference to individuals who exercise their protected rights of assembly and free speech, who may come into contact with the untrained officers and command staff.

24.    Among other incidents occurring over the course of the George Floyd civil rights demonstrations in San Jose, it was reported that: (a) SJPD Officer Jared Yuen was captured on video behaving aggressively, yelling obscenities at demonstrators, and recklessly discharging his less lethal firearm; (b) a "Good Samaritan," who had attempted to assist when an officer was knocked unconscious, was later shot in the abdomen with a projectile, allegedly by Officer Yuen; and (c) a peaceful demonstrator was struck in the genitals with a projectile.

25.    Plaintiff is informed and believes, and thereon alleges that the City and the SJPD were unable to document the true number of less lethal munitions fired during the course of the George Floyd civil rights demonstrations, among other reasons, because many officers simply documented using "multiple" rounds without providing an accurate or specific total.  For example, for the demonstrations that occurred on May 30, 2020, the SJPD could only estimate that its Special Operations forces fired approximately 133 40mm foam baton rounds, and its patrol officers fired an unknown number of such rounds.  In spite of the policy set forth in section L 2629 of the SJPD's Duty Manual that, "[t]he intentional discharge of a Projectile Impact Weapon at a suspect shall be documented as a use of force[,]" the SJPD's documentation was inadequate.  The failure to carefully and appropriately document uses of less lethal firearms on nonviolent civil rights demonstrators evidences deliberate indifference to the lives and safety of individuals who exercise their First Amendment rights in the City.

26.     Video taken on or about May 29, 2020 shows SJPD Officer Jared Yuen behaving aggressively, yelling obscenities at demonstrators, and firing his less lethal firearm in a reckless manner.  In response to officer Yuen's unreasonable behavior, then-Chief Edgardo Garcia described Yuen at a media briefing on May 31 as "a good kid" who "made a mistake[.]"  Garcia later apologized for his remarks.  Yuen allegedly was allowed to return to duty on May 30, however, and that same day he and another officer allegedly discharged less lethal firearms into a woman's apartment.  The woman was struck in the chest, and her apartment was damaged.  The failure of SJPD leadership to promptly and unequivocally condemn Yuen's behavior sent the wrong message to other SJPD officers – that the unreasonable use of less lethal firearms against non-threatening demonstrators would be tolerated and would not result in termination.

27.     On information and belief, some members and former members of the SJPD are openly hostile to the Black Lives Matter movement or others who advocate for the eradication of anti-Black racism in law enforcement.  For example, based on a June 26, 2020 anonymous blog post available at https://blog.usejournal.com/racism-and-hate-behind-the-the-blue-wall-exposing-secret-law-enforcement-facebook-groups-6cf23a596a98, it was widely reported that SJPD Officer Mark Pimentel commented on Facebook, "black lives don't really matter."  Similarly, it was reported that SJPD Officer Phillip White was reinstated by an independent arbitrator after he was fired, having tweeted, "Threaten me or my family and I will use my God given and law appointed right and duty to kill you. #CopsLivesMatter" and "By the way if anyone feels they can't breathe or their lives matter, I'll be at the movies tonight, off duty, carrying my gun."  In 2016, the San Jose Police Officers Association posted a video, available at https://www.youtube.com/watch?v=w5amQnliQqk, which ends with the words, "The San Jose Police Officers' Association believes All Lives Matter" and "Blue Lives Matter."  These slogans are commonly understood to have been created in response to the Black Lives Matter movement, in order to undermine it.  On information and belief, such sentiments influenced the SJPD's use of force decisions during the George Floyd demonstrations.

///

///

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

28.    After former-Chief Garcia's retirement was announced, the City named its finalists in the search to replace him – including Minneapolis police Chief Medaria Arradondo, who led the Minneapolis Police Department at the time George Floyd was killed.  Arradondo withdrew his name from consideration.[2]

29.    On November 20, 2020, pursuant to California Government Code §§ 905, 910, et seq., plaintiff presented to the City a government claim for money damages against the City and Does 1-50, for the conduct alleged herein.  On or about January 14, 2021, the City mailed a Notice of Rejection of Claim.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourth Amendment – Excessive Force
### (Against the City of San Jose and Does 1-50)

30.    Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

31.    In shooting Mr. Johnson with a less lethal firearm, although Mr. Johnson was demonstrating peacefully and was never alleged to have committed any crime, defendants subjected Mr. Johnson to an unreasonable seizure and excessive force.  In doing the acts alleged herein, defendants deprived Mr. Johnson of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

32.    In doing the acts alleged herein, defendants were acting under color of state law.

33.    In violating plaintiff's constitutional rights, defendants were acting in accordance with a custom, policy and practice of the City and the SJPD, which proximately caused the harm, damages, and constitutional violations alleged herein.  Defendants failed to ensure that only officers who had received adequate training were allowed to use less-lethal firearms during the George Floyd civil rights protests.  Defendants further failed to ensure that any training provided was adequate to apprise officers of the circumstances under which less lethal firearms constitutionally may be used for crowd control.  Such failure amounts to deliberate indifference

---

[2] Salonga & Angst, *San Jose: Minneapolis chief drops out of SJPD chief search*, THE MERCURY NEWS, Jan. 25, 2021 (updated Jan. 26, 2021), https://www.mercurynews.com/2021/01/25/san-jose-quietly-announces-sjpc-chief-finalists-including-the-top-cop-in-minneapolis/.

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

to the rights of persons with whom the SJPD comes into contact.

34.     As a direct and proximate result of defendants' wrongful acts, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial.

35.     Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

<u>**SECOND CLAIM FOR RELIEF**</u>

**42 U.S.C. § 1983 – First Amendment – Retaliatory Use of Force**
**(Against the City of San Jose and Does 1-50)**

36.     Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

37.     Mr. Johnson was engaged in the constitutionally protected activity of peacefully protesting police brutality at the time he was shot.

38.     Defendants' wrongful acts alleged herein would chill an ordinary person from continuing to engage in this protected activity.

39.     Mr. Johnson is informed and believes, and thereon alleges, that defendants subjected him to the above-described treatment in retaliation for, and as punishment for, his exercise of his protected rights of free speech and assembly, and to deter him from asserting his First Amendment rights in the future.  Mr. Johnson is informed and believes, and thereon alleges, that defendants' desire to retaliate against individuals protesting police brutality, and to deter such protests, was a substantial and motivating factor in their use of excessive force.

40.     In doing the acts alleged herein, defendants deprived Mr. Johnson of his rights under the First and Fourteenth Amendments to the United States Constitution.

41.     In doing the acts alleged herein, defendants were acting under color of state law.

42.     In violating plaintiff's constitutional rights, defendants were acting in accordance with a custom, policy and practice of the City and the SJPD, which proximately caused the harm, damages, and constitutional violations alleged herein.  Defendants failed to provide

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

constitutionally adequate training on use of force, and specifically, use of less lethal firearms, in the context of crowd control and civil rights demonstrations.  Such failure amounts to deliberate indifference to the rights of persons with whom the SJPD comes into contact.

43.     As a direct and proximate result of defendants' wrongful acts, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial.

44.     Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

## THIRD CLAIM FOR RELIEF

### Ralph Act – California Civil Code §§ 51.7, 52
**(Against the City of San Jose and Does 1-50)**

45.     Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

46.     Defendants committed a violent act against plaintiff.  Plaintiff is informed and believe, and thereon alleges, that a substantial motivating reason for defendants' conduct was plaintiff's political affiliation or perceived political affiliation with the nationwide movement against law enforcement's disproportionate use of lethal and non-lethal excessive force against Black people, which includes but is not limited to, the Black Lives Matter movement.

47.     As a direct and proximate result of defendants' wrongful acts, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial, and is entitled to civil penalties under Cal. Civ. Code § 52.

48.     Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

///

///

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

**FOURTH CLAIM FOR RELIEF**

**Bane Act – California Civil Code §§ 52.1, 52**
**(Against the City of San Jose and Does 1-50)**

49.    Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

50.    Defendants' conduct alleged herein interfered with, or constituted an attempt to interfere with, Mr. Johnson's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and article I, sections 2, 3, and 13 of the California Constitution, through violent acts, threats, intimidation, or coercion.

51.    Not only did defendants intend to use force against Mr. Johnson, defendants intended to use unreasonable and excessive force against Mr. Johnson.  Mr. Johnson is informed and believes, and thereon alleges, that defendants subjected him to excessive force in retaliation for, and as punishment for, his exercise of his protected rights of free speech and assembly on the subject of police brutality, and to deter him from asserting these rights in the future on the subject of police brutality.  Mr. Johnson reasonably believed that if he continued to exercise his rights under the First Amendment to the United States Constitution and sections 2 and 3 of the California Constitution, defendants would commit further violence upon him.

52.    As a direct and proximate result of defendants' wrongful acts, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial, and is entitled to statutory damages under Cal. Civ. Code § 52.

53.    Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

**FIFTH CLAIM FOR RELIEF**

**Battery**
**(Against the City of San Jose and Does 1-50)**

54.    Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

55.    In performing the acts alleged herein, defendants intentionally touched, or caused less lethal projectiles to touch, Mr. Johnson.

56.    Defendants used unreasonable and excessive force to seize Mr. Johnson.

57.    Mr. Johnson did not consent to defendants' use of force.

58.    As a direct and proximate result of defendants' wrongful acts, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial.

59.    Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

## SIXTH CLAIM FOR RELIEF

### Negligence
### (Against the City of San Jose and Does 1-50)

60.    Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

61.    Defendants knew or should have known that shooting Mr. Johnson with a projectile from a less lethal firearm would injure him, and that such force was unreasonable and excessive under the circumstances.  In doing the acts alleged herein, defendants breached a duty to Mr. Johnson to refrain from using unreasonable and excessive force.

62.    Defendants knew or should have known that their failure adequately to train SJPD officers in crowd control and the use of less lethal firearms in that specific context would cause Mr. Johnson and other civil rights demonstrators injury.  In failing to provide appropriate training, defendants breached a duty to Mr. Johnson.

63.    As a direct and proximate result of defendants' breach of their duties, Mr. Johnson suffered damages, including but not limited to, bodily injury, physical pain, emotional distress, and deprivation of constitutional rights, according to proof at the time of trial.

64.    Plaintiff is informed and believes, and thereon alleges, that defendants' acts alleged herein were done with malice, fraud, and oppression, and in knowing and reckless

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

disregard of plaintiff's constitutional rights, justifying an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF

### California Public Records Act – Failure to Produce Public Records
### (Against the City of San Jose)

65.    Plaintiff incorporates herein the preceding paragraphs of this Complaint to the extent relevant, as if fully set forth.

66.    Plaintiff is an individual "person" and "member of the public" as those terms are defined in the California Public Records Act ("CPRA").  *See* Gov. Code, § 6252(b)-(c).

67.    On August 5, 2020, plaintiff requested public records held by the City, its SJPD, and the City's elected officials, agents, employees, and other representatives.

68.    The City is a "local agency" and a "public agency" as those terms are defined in the CPRA (*see* Gov. Code, § 6252(a), (d)), and as such, is subject to the public disclosure requirements of article I, section 3(b) of the California Constitution and the CPRA, Government Code § 6250 et seq.  Plaintiff is informed and believes and thereon alleges that the City possesses records at issue here.

69.    Effective January 1, 2019, SB 1421 amended California Penal Code sections 832.7 and 832.8, concerning law enforcement personnel records.  Penal Code section 832.7(b) now provides, among other things, that "[n]otwithstanding subdivision (a), subdivision (f) of Section 6254 of the Government Code, or any other law," records relating to certain conduct by peace officers are subject to disclosure under the CPRA.

70.    Under Penal Code § 832.7(b)(1)(A)(i)-(ii), records relating to the report, investigation, or findings of incidents involving the discharge of a firearm at a person by a peace officer, or in which the use of force by a peace officer against a person resulted in death or great bodily injury, are not confidential and shall be made available for public inspection under the CPRA.  The types of records subject to disclosure include: "all investigative reports; photographic, audio, and video evidence; transcripts or recordings of interviews; autopsy reports; all materials compiled and presented for review to the district attorney or to any person or body charged with determining whether to file criminal charges against an officer in connection with

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

an incident, or whether the officer's action was consistent with law and agency policy for

purposes of discipline or administrative action, or what discipline to impose or corrective action

to take; documents setting forth findings or recommended findings; and copies of disciplinary

records relating to the incident, including any letters of intent to impose discipline, any

documents reflecting modifications of discipline due to the Skelly or grievance process, and

letters indicating final imposition of discipline or other documentation reflecting implementation

of corrective action."  Pen. Code, § 832.7(b)(2).

71.    Effective January 1, 2019, AB 748 similarly provides for public disclosure,

subject to certain conditions, of video or audio recordings that relate to "critical incidents,"

which include incidents "involving the discharge of a firearm at a person by a peace officer or

custodial officer[,]" and incidents "in which the use of force by a peace officer or custodial

officer against a person resulted in death or in great bodily injury."  Gov. Code, §

6254(f)(4)(C)(i)-(ii).

72.    Plaintiff made the following CPRA requests on August 5, 2020:

1.    All reports RELATING TO the CIVIL RIGHTS DEMONSTRATION, including but not limited to, internal memoranda, COMMUNICATIONS, handwritten reports or notes.

2.    All video recordings, including, but not limited to, BWC recordings, RELATING TO the CIVIL RIGHTS DEMONSTRATION.

3.    Global positioning system (GPS) data, or other similar location data, whether captured by BWCs or other electronic devices used by City law enforcement personnel during the CIVIL RIGHTS DEMONSTRATION, that evidences the location of City law enforcement personnel near the intersection of Santa Clara Ave. and Fourth Street in the downtown area of San Jose, between 9 PM and 12 AM PST on May 30, 2020.

4.    Video recordings taken by the cameras shown in Exhibit A attached to this public records request that are located on the San Jose City Hall building at Santa Clara Ave. and Fourth Street, between the hours of 5:00 PM and 12:00 AM on May 30, 2020.

5.    All COMMUNICATIONS RELATING TO the CIVIL RIGHTS DEMONSTRATION, including but not limited to, emails, text messages, and audio recordings.

6.    All "Use of Force" reports, as described in the San Jose Police Department Duty Manual, Line/Operations Procedure L 2643 through L 2645, RELATING TO the CIVIL RIGHTS DEMONSTRATION.

7.    All WRITINGS showing the names, badge numbers, or duty assignments

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

of City law enforcement personnel, or other outside law enforcement personnel, on duty and assigned to cover the CIVIL RIGHTS DEMONSTRATION.

8. The official service photographs of all City law enforcement personnel who were assigned to cover the CIVIL RIGHTS DEMONSTRATION.

9. All WRITINGS showing to whom the City issued any crowd suppression device, including, but not limited to, less-lethal devices for firing rubber bullets and other projectiles such as tear gas canisters, on May 30, 2020.

10. All WRITINGS evidencing law enforcement tactics and procedures employed on May 30, 2020, including those generally adopted by the City's police department and related agencies, as well as any specific tactical plans or procedures prepared before, during, or after the CIVIL RIGHTS DEMONSTRATION.

11. All WRITINGS showing the types, descriptions, and other background information on crowd suppression devices that the City employed on May 30, 2020.

12. All claims against the City pursuant to the Government Tort Claims Act, for injuries occurring in connection with civil rights demonstrations in the City, from May 29, 2020 to the present.

Plaintiff's CPRA requests are attached as **Exhibit A**.

73.    The term "CIVIL RIGHTS DEMONSTRATION" was defined to "refer to the civil rights demonstration occurring on May 30, 2020, near the intersection of Santa Clara Ave. and Fourth Street in the downtown area of San Jose, between 5 PM and 12 AM PST." This definition describes the vicinity of San Jose's City Hall.

74.    Through counsel, plaintiff engaged in protracted negotiations with the City in an attempt to obtain a complete response to the August 5, 2020 requests. While the City has produced some records, the City has not made a complete production, and continues to assert that certain records or portions of records responsive to Requests 1-2, 5-6, and 8 are exempt from disclosure.

75.    Plaintiff is informed and believes, and thereon alleges, that the City possesses body camera footage and other records that relate to the George Floyd civil rights demonstration on May 30, in the vicinity of City Hall. Plaintiff is informed and believes, and thereon alleges, that these records must be disclosed, in whole or in part, under SB 1421 and AB 748. The City continues to assert the exemption in Government Code section 6254(f) as to Requests 1-2 and 5-

6, and has not produced general offense reports, body camera footage, or use of force reports. The City produced a small number of communications and did not provide an explanation of the grounds for its assertion of the section 6254(f) exemption as to Request 5, although plaintiff requested one through counsel.  Plaintiff disputes that these record are exempt and seeks to compel the City to disclose them under SB 1421, AB 748, and any other applicable open government laws.

76.    The City refused to produce official service photographs responsive to Request 8, and claimed these records are exempt under Government Code section 6255.  The City also claimed it did not have records detailing personnel who were assigned to the CIVIL RIGHTS DEMONSTRATION, as defined, even though the City was able to produce a listing of SJPD personnel assigned to work various shifts on May 30 in response to Request 7.  Plaintiff disputes that the official service photographs of the officers on this list are exempt.

77.    The City produced some documents in response to Requests 9 and 11, but the City's response to date does not account for all crowd suppression devices used on May 30, 2020.  Plaintiff is informed and believes, and thereon alleges, that records withheld by the City, such as general offense reports and use of force reports, contain additional documentation responsive to these requests.

78.    On or about January 28, 2021, plaintiff, through counsel, asked the City voluntarily to provide a list describing any records withheld and the basis for the claimed exemption.  The City did not agree to this request.

79.    An actual and immediate controversy has arisen and now exists between plaintiff and the City related to their respective rights and duties.  Plaintiff is informed and believes, and thereon alleges, that the City has failed to comply with its duties under the law applicable to disclosure of public records, including but not limited to, the duty to provide public records under article I, section 3(b) of the California Constitution, the CPRA, and Penal Code § 832.7. Plaintiff contends, and the City denies, that the City must produce the records sought by plaintiff because plaintiff and the public are entitled to those records pursuant to Penal Code § 832.7(b)(1)(A)(i)-(ii), the CPRA, and the California Constitution.

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

80.    Plaintiff desires a judicial determination of his rights and the City's duties under the above-mentioned laws.  A judicial declaration is necessary and appropriate at this time, so that Plaintiff may ascertain his rights and the City's duties under the law.

81.    Plaintiff desires a judicial determination, declaration, and order that the City is required to produce all additional responsive records.

82.    The City's failure to comply with state law regarding access to public records has caused plaintiff and the public to suffer irreparable injury.  Unless enjoined by this Court, the City will continue to unlawfully withhold public records that are subject to disclosure under the law.  Plaintiff has no plain, adequate, or speedy remedy at law and is entitled to injunctive relief against the City.

WHEREFORE, plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff has been damaged by the foregoing acts of defendants, and each of them, in an amount according to proof at trial.  Plaintiff seeks as relief, without limitation, the following:

1.    For general damages in an amount according to proof;

2.    For special damages, including but not limited to past and future medical expenses, in an amount according to proof;

3.    For civil penalties under California Civil Code §§ 51.7 and 52;

4.    For statutory damages under California Civil Code §§ 52.1 and 52;

5.    For punitive damages against the individual defendants, as allowed by law;

6.    On the claim for relief under the California Public Records Act, for a declaration, order and judgment that the City is required to provide the public records requested by plaintiff and make them promptly available to the general public;

7.    On the claim for relief under the California Public Records Act, for an injunction compelling the City to provide the public records requested by plaintiff and make them promptly available to the general public;

8.    For pre-judgment and post-judgment interest;

9.    For attorneys' fees;

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

1      10.    For costs of suit; and

2      11.    For such other and further relief as the Court may deem proper.

3

4    DATED:  March 16, 2021                McMANIS FAULKNER

5

6                                          /s/ Christine Peek
                                           CHRISTINE PEEK

7                                          Attorneys for Plaintiff,

8                                          KYLE JOHNSON

9

10                          **<u>DEMAND FOR JURY TRIAL</u>**

11          Plaintiff hereby demands a jury trial as provided by Amendment VII to the United States

12   Constitution and Rule 38(a) of the Federal Rules of Civil Procedure.

13

14   DATED:  March 16, 2021                McMANIS FAULKNER

15

16                                         /s/ Christine Peek
                                           CHRISTINE PEEK

17                                         Attorneys for Plaintiff,

18                                         KYLE JOHNSON

19

20

21

22

23

24

25

26

27

28

Complaint for Damages, Declaratory and Injunctive Relief; Demand for Jury Trial; Case No.

# EXHIBIT A

August 5, 2020

<u>**VIA ELECTRONIC MAIL**</u>


San Jose Police Department
Attn: Records Unit
201 West Mission Street
San Jose, CA 95110
E-mail: sjpdrecords@sanjoseca.gov

Office of the City Attorney
Attn: Public Records Coordinator
200 E. Santa Clara St.
16th Floor
San Jose, CA 95113
E-mail: cao.main@sanjoseca.gov


      **Re:    California Public Records Request**

Dear Records Custodian:

Our office represents Kyle Johnson.  By this letter, Mr. Johnson makes the following demand for public records, pursuant to the California Public Records Act (Gov. Code, § 6250, et seq.), article 1, section 3(b) of the California Constitution, the presumptive common law right of access, and any other applicable open government law.  This request seeks responsive public records held by the San Jose Police Department (SJPD), or the City of San Jose (the "City"), as well as its elected officials, agents, employees, and other representatives.

**DEFINITIONS AND INSTRUCTIONS**

1. <u>CIVIL RIGHTS DEMONSTRATION</u>: This term shall refer to the civil rights demonstration occurring on May 30, 2020, near the intersection of Santa Clara Ave. and Fourth Street in the downtown area of San Jose, between 5 PM and 12 AM PST.

2. <u>BWC</u>: The terms "BWC" and "BWCs" mean and include body-worn cameras or "body cams," and other cameras worn by law enforcement officers.



Public Records Request
August 5, 2020
Page 2

3.  <u>WRITING and WRITINGS</u>: The term "WRITING" and "WRITINGS" shall have the meaning set forth in California Government Code section 6252(g).  These terms shall also mean and include "Writing" as defined in California Evidence Code section 250.

4.  <u>RELATING TO</u>: The term "RELATING TO" and all iterations of these words shall mean and include "constitute, refer, reflect, discuss, show, demonstrate, evidence or be in any way logically or factually connected with the matter discussed or identified."

5.  <u>COMMUNICATION and COMMUNICATIONS</u>: The terms "COMMUNICATION" and "COMMUNICATIONS" shall mean every manner or method of disclosure or transfer or exchange of information, whether orally or by document, and whether face to face, by telephone, mail, e-mail, facsimile, text message, video, personal delivery or otherwise.

6.  Responsive materials should include all associated metadata, including without limitation and as applicable: the date on which a COMMUNICATION was sent; the date on which a document or COMMUNICATION was obtained, created, modified, accessed, deleted, copied, moved, or saved; the author of a COMMUNICATION ("from" field); the primary recipient(s) of a COMMUNICATION ("to" field); other recipients of a COMMUNICATION ("cc" and "bcc" fields); the subject line of a COMMUNICATION (if applicable); the title of a document; the author(s) of a document; the file name and file path of a document; the file type; and all other embedded or associated data RELATING TO the document or COMMUNICATION.  COMMUNICATIONS should be produced along with any attachments to those COMMUNICATIONS.

7.  A request for a "WRITING," "WRITINGS," "COMMUNICATION," or "COMMUNICATIONS" shall mean and include all responsive WRITINGS and COMMUNICATIONS, however created, stored, or transmitted, and specifically shall mean and include WRITINGS and COMMUNICATIONS created, stored, or transmitted using personal equipment such as personal email accounts or personal electronic devices, regardless of whether or not a copy of the WRITING or COMMUNICATION exists on City servers or property.  (See *City of San Jose v. Superior Court (Smith)* (2017) 2 Cal.5th 608, 614.)

8.  The responding parties are reminded that Government Code section 6253.3 prohibits state and local agencies from "allow[ing] another party to control the disclosure of information that is otherwise subject to disclosure pursuant to

Public Records Request
August 5, 2020
Page 3

[the CPRA]."

9.  If the responding parties find this request insufficiently specific, please provide the assistance required by section 6253.1 in identifying records and information that are responsive to the request or purpose of the request.

10. If the responding parties believe any portion of the records requested is exempt from disclosure by express provision of law, section 6253(a) of the Government Code additionally requires segregation or deletion of the material and the release of the remainder of the information.  With regard to all records, please provide information as to (1) the existence of such records; (2) whether you intend to make such records available; and (3) whether you claim any exemption or privilege to any record or portion of a record.

## REQUESTS

1.  All reports RELATING TO the CIVIL RIGHTS DEMONSTRATION, including but not limited to, internal memoranda, COMMUNICATIONS, handwritten reports or notes.

2.  All video recordings, including, but not limited to, BWC recordings, RELATING TO the CIVIL RIGHTS DEMONSTRATION.

3.  Global positioning system (GPS) data, or other similar location data, whether captured by BWCs or other electronic devices used by City law enforcement personnel during the CIVIL RIGHTS DEMONSTRATION, that evidences the location of City law enforcement personnel near the intersection of Santa Clara Ave. and Fourth Street in the downtown area of San Jose, between 9 PM and 12 AM PST on May 30, 2020.

4.  Video recordings taken by the cameras shown in Exhibit A attached to this public records request that are located on the San Jose City Hall building at Santa Clara Ave. and Fourth Street, between the hours of 5:00 PM and 12:00 AM on May 30, 2020.

5.  All COMMUNICATIONS RELATING TO the CIVIL RIGHTS DEMONSTRATION, including but not limited to, emails, text messages, and audio recordings.

6.  All "Use of Force" reports, as described in the San Jose Police Department Duty Manual, Line/Operations Procedure L 2643 through L 2645, RELATING TO the CIVIL RIGHTS DEMONSTRATION.

Public Records Request
August 5, 2020
Page 4

7. All WRITINGS showing the names, badge numbers, or duty assignments of City law enforcement personnel, or other outside law enforcement personnel, on duty and assigned to cover the CIVIL RIGHTS DEMONSTRATION.

8. The official service photographs of all City law enforcement personnel who were assigned to cover the CIVIL RIGHTS DEMONSTRATION.

9. All WRITINGS showing to whom the City issued any crowd suppression device, including, but not limited to, less-lethal devices for firing rubber bullets and other projectiles such as tear gas canisters, on May 30, 2020.

10. All WRITINGS evidencing law enforcement tactics and procedures employed on May 30, 2020, including those generally adopted by the City's police department and related agencies, as well as any specific tactical plans or procedures prepared before, during, or after the CIVIL RIGHTS DEMONSTRATION.

11. All WRITINGS showing the types, descriptions, and other background information on crowd suppression devices that the City employed on May 30, 2020.

12. All claims against the City pursuant to the Government Tort Claims Act, for injuries occurring in connection with civil rights demonstrations in the City, from May 29, 2020 to the present.

If you have questions, please call me at (408) 279-8700.  If there are fees for copying these records, please let me know the amount.  I may also be reached at the address below, or by email at cpeek@mcmanislaw.com.

Thank you.

Very truly yours,

McMANIS FAULKNER

/s/ *Christine Peek*

CHRISTINE PEEK

# EXHIBIT A

















