1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

KYLE JOHNSON,

              Plaintiff,

    v.

CITY OF SAN JOSE, et al.,

              Defendants.

Case No.  21-cv-01849-BLF

**ORDER GRANTING IN PART WITH LEAVE TO AMEND IN PART AND DENYING IN PART MOTION TO DISMISS**

[Re:  ECF No. 53]

Plaintiff Kyle Johnson alleges that he was seriously injured when Officer James Adgar of the San Jose Police Department fired a less lethal projectile weapon at him during the George Floyd protests in San Jose, California on May 30, 2020.  Johnson brings his lawsuit against the City of San Jose ("the City"), Officer Adgar, and other unnamed police officers, asserting claims for battery and negligence and violations of 28 U.S.C. § 1983, the California Bane Act, and the California Public Records Act.  Defendants have moved to dismiss the First Amended Complaint. ECF No. 53 ("MTD"); *see also* ECF No. 59 ("Reply").  Johnson opposes the motion.  ECF No. 58 ("Opp.").  The Court held a hearing on the motion on December 16, 2021.  For the reasons stated on the record and explained below, the motion is GRANTED IN PART with leave to amend in part and DENIED IN PART.

**I.     BACKGROUND**

    **A.     Johnson's Experience**

As alleged in the First Amended Complaint and accepted as true for the purposes of this motion, on the night of May 30, 2020, Plaintiff Kyle Johnson participated in protests near San Jose City Hall in the aftermath the killing of George Floyd in Minneapolis, Minnesota.  ECF No. 47 ("FAC") ¶ 12.  Johnson alleges that on that day, there was no curfew in place in San Jose and that

city policy prohibited the use of 40mm projectile impact weapons that do not contain chemical agents ("less lethal weapons") for crowd control purposes. *Id.* ¶¶ 13–14.

Johnson was protesting near "the planters lining the sidewalk of East Santa Clara Street" in front of the plaza of City Hall. FAC ¶ 15. Officer Adgar was standing with other officers on East Santa Clara Street, and he was equipped with a 40mm launcher and zip ties. *Id.* Officers on East Santa Clara Street began to deploy their weapons, including less lethal weapons, after an unidentified member of the crowd threw a plastic water bottle up in the air (which landed on the ground without hitting any officers). *Id.* ¶ 16. In an attempt to flee from the use of these weapons, Johnson ran perpendicular from the officers' advance and towards City Hall. *Id.* As Johnson attempted to flee, Officer Adgar "aimed and intentionally fired" a 40mm foam baton projectile towards him. *Id.* Johnson heard a noise that sounded like compressed air and felt the projectile strike the back of his leg as he was in the City Hall plaza. *Id.* The projectile impact left a large circular-shaped injury on Johnson's leg. *Id.*

After Johnson was hit, he hobbled out of the line of fire towards City Hall and then limped away from the area of the demonstrations. FAC ¶ 17. As he did so, Johnson heard tear gas being deployed and the police making an announcement that the demonstration was unlawful. *Id.* ¶ 18. Johnson did not hear any order to disperse or declaration of an unlawful assembly prior to being hit with the projectile. *Id.* Johnson was never charged with a crime in connection with demonstrating on May 30, 2020. *Id.*

The impact of the projectile caused "a large circular mark and severe bruising" on Johnson's leg. FAC ¶ 20. A blood clot formed, requiring Johnson to make multiple trips to the emergency room and undergo "a sustained course of follow-up treatment," which included medication. *Id.* Johnson's risk of blood clots has increased, and he continues to suffer from blood clots. *Id.* He anticipates that he will have to continue taking medication to counteract the blood clots for the rest of his life. *Id.* The injury has also severely impaired Johnson's mobility. Although he was previously an active, athletic person who taught physical education and coached sports, for three months after the incident he was unable to walk or exercise normally. *Id.* ¶ 21. He continues to suffer pain, reduced mobility, and mental and emotional distress from the impact

of the projectile and his treatment experience.  *Id.* ¶ 22.

**B.    San Jose Police Department Training and Officers' Opinions on Protestors**

Johnson alleges that as of the protests on May 30, 2020, the City's training of officers regarding crowd control, and in particular the use of less lethal weapons, had been "minimal and infrequent."  FAC ¶ 23.  The City had not conducted any ongoing training for patrol officers on the use of the 40mm launchers used against Johnson.  *Id.*  In spite of this lack of training, the City and the police department allowed untrained officers to be equipped with less lethal firearms in their response to the protests.  *Id.*  Officer Adgar received no training on the use of the foam baton projectiles in the five years preceding the May 30, 2020 protests.  *Id.* ¶ 25.

To the extent any training was offered, Johnson says that it was constitutionally inadequate.  FAC ¶ 24.  For example, a slide deck prepared by Sergeant Christopher Sciba, a nonparty City police officer, says that projectile impact weapons could be used for "Riot/Crowd Control," but does not provide guidance about the circumstances under which use of projectile impact weapons would be permitted by City policy or the Constitution.  *Id.*  The slides acknowledge that "[i]njury should be expected" and depict shots to the chest, spine, head, and neck as "lethal force."  *Id.*  The slide urges trainees to "not hesitate" and "[a]ways win."  *Id.*  Furthermore, the City is not able to quantify the true number of less lethal munitions used during the George Floyd protests because officers improperly counted the number of rounds used, in violation of the San Jose Police Department's duty manual.  FAC ¶ 28.

Johnson alleges that some members and former members of the City police department are "openly hostile" to the Black Lives Matter movement "or others who advocate for the eradication of anti-Black racism in law enforcement."  FAC ¶ 30.  Johnson alleges that multiple officers—none of them parties here—have made remarks critical of the movement.  One commented on Facebook that "black lives don't really matter."  *Id.*  Another was fired (but later reinstated) after he tweeted, "Threaten me or my family and I will use my God given and law appointed right and duty to kill you.  #CopLivesMatter" and "By the way if anyone feels they can't breathe or their lives matter, I'll be at the movies tonight, off duty, carrying my gun."  *Id.*  The San Jose Police Officers Association also allegedly posted a video that ended with the phrases "All Lives Matter"

1  and "Blue Lives Matter," phrases which Johnson alleges have been created to undermine the

2  Black Lives Matter movement.  *Id.*

3  ### C.   Public Records Request

4  As part of the preparation for this lawsuit, on August 5, 2020, Johnson requested public

5  records held by the City, San Jose Police Department, and other City officials pursuant to the

6  California Public Records Act.  FAC ¶ 66; *see also id.* ¶ 71 (listing his 12 requests).  Johnson's

7  counsel engaged in "protracted negotiations" with the City in an attempt to obtain fulsome

8  responses to the requests.  *Id.* ¶ 73.  Johnson alleges that the City has produced some records, but

9  has improperly withheld records responsive to certain requests as exempt from disclosure.  *Id.*

10  Johnson alleges that these withheld records include body camera footage of the protests, general

11  offense reports, official service photographs, lists of personnel assigned to the protests, and use of

12  force reports.  *Id.* ¶ 74.

13  ### D.   This Lawsuit

14  Johnson filed this lawsuit on March 16, 2021 against Officer Adgar, the City, and Doe

15  defendants.  ECF No. 1.  The parties fully briefed a motion to dismiss, *see* ECF Nos. 27, 31, 32,

16  but then stipulated to Johnson filing a First Amended Complaint.  ECF Nos. 46, 48.  The First

17  Amended Complaint is the operative complaint.  *See* FAC.  Johnson asserts two claims under 42

18  U.S.C. § 1983 against Officer Adgar and the City—one for violation of the Fourth Amendment for

19  a seizure accomplished through excessive force and the second for violation of the First

20  Amendment for retaliatory use of force.  *See id.* ¶¶ 33–47.  Johnson also asserts claims against

21  Officer Adgar and the City for violation of the Bane Act, Cal. Civ. Code §§ 52.1, 52; battery; and

22  negligence.  *Id.* ¶¶ 48–63.[1]  He asserts a claim against the City only for violation of the California

23  Public Records Act.  *Id.* ¶¶ 64–81.  Johnson requests general and special damages; civil penalties

24  and statutory damages under the Bane Act; punitive damages; injunctive and declaratory relief

25  under the California Public Records Act; pre- and post-judgment interest; attorneys' fees; and

26  _____

27  [1] Although the operative complaint contains isolated references to the Ralph Act, Cal. Civ. Code

28  § 51.7, Johnson confirmed in opposition that those references were inadvertent.  Opp. at 27 n.1.

United States District Court
Northern District of California

1    costs of suit.  *Id.* at "Prayer for Relief".

2    **II.    LEGAL STANDARD**

3         "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

4    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

5    *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

6    729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

7    as true all well-pled factual allegations and construes them in the light most favorable to the

8    plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court

9    need not "accept as true allegations that contradict matters properly subject to judicial notice" or

10   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

11   inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation

12   marks and citations omitted).  While a complaint need not contain detailed factual allegations, it

13   "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

14   on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

15   550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the

16   reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  On a motion to

17   dismiss, the Court's review is limited to the face of the complaint and matters judicially

18   noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v.*

19   *Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

20   **III.   DISCUSSION**

21        The Court evaluates each of Johnson's six claims in turn, splitting his first two claims into

22   separate analyses for Officer Adgar and the City given the different applicable legal standards.

23        **A.    Claim 1 – § 1983 / Fourth Amendment (Officer Adgar)**

24        Johnson's first claim against Officer Adgar is a § 1983 claim for a seizure accomplished

25   through excessive force under the Fourth Amendment.  FAC ¶¶ 33–38.  Officer Adgar argues that

26   he is entitled to qualified immunity on this claim because he did not violate clearly established

27   law.  MTD at 3–8.  Johnson says that Ninth Circuit law clearly established that Officer Adgar's

28   conduct constituted a seizure and that recent Supreme Court precedent does not alter that

United States District Court
Northern District of California

1  conclusion.  Opp. at 13–21.

2      "The doctrine of qualified immunity protects government officials from liability for civil

3  damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or

4  constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

5  conduct.'"  *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731,

6  735 (2011)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (establishing the two-part test).

7  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

8  it would be clear to a reasonable [official] that his conduct was unlawful in the situation he

9  confronted."  *Saucier*, 533 U.S. at 202.

10      The Supreme Court has repeatedly reiterated the longstanding principle that "the clearly

11  established right must be defined with specificity."  *City of Escondido v. Emmons*, 139 S. Ct. 500,

12  503 (2019).  Defining the right at too high a level of generality "avoids the crucial question

13  whether the official acted reasonably in the particular circumstances that he or she faced."  *District

14  of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765,

15  779 (2014)).  "[A] defendant cannot be said to have violated a clearly established right unless the

16  right's contours were sufficiently definite that any reasonable official in the defendant's shoes

17  would have understood that he was violating it."  *Plumhoff*, 572 U.S. at 779.  There can be "the

18  rare 'obvious case,' where the unlawfulness of the [official's] conduct is sufficiently clear even

19  though existing precedent does not address similar circumstances."  *Vazquez v. Cty. of Kern*, 949

20  F.3d 1153, 1164 (9th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 590).  The relevant inquiry is

21  "whether the [official] had fair notice that her conduct was unlawful."  *Nicholson v. City of Los*

22  *Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152

23  (2018) (per curiam)).

24      The Court will now analyze the two prongs of the qualified immunity analysis.

25          **i.    Prong One – Violation of a Constitutional Right**

26      Under a prong one analysis on a motion to dismiss, Officer Adgar is entitled to qualified

27  immunity unless Johnson "pleads facts showing that [Officer Adgar] violated a statutory or

28  constitutional right."  *Wood*, 572 U.S. at 757.  Officer Adgar says that under the Supreme Court's

United States District Court
Northern District of California

1  recent decision in *Torres v. Madrid*, 141 S. Ct. 989 (2021), the Court must find that a seizure

2  occurred before analyzing the factors for excessive force under *Graham v. Connor*, 490 U.S. 386,

3  396 (1989).  MTD at 3–7.  He says that because there was no "objective manifestation of an intent

4  to restrain," there was no seizure and thus no *Graham* analysis is required.  *Id.* at 4.  Even so, he

5  says that he is entitled to qualified immunity because relevant case law has been ambiguous as to

6  when a seizure occurs, meaning he could not have violated "clearly established" law by firing the

7  foam baton at Johnson.  *Id.* at 4–8.  Johnson responds that *Torres* does not undermine *Graham*,

8  that he adequately alleges a seizure, and that he adequately alleges the unreasonableness and

9  excessiveness of the force used under *Graham*.  Opp. at 18–21.  The Court first analyzes whether

10  *Torres* poses a threshold bar for Johnson's claims (concluding that it does not) before moving to

11  the *Graham* analysis.

12              *a.*   Torres v. Madrid

13              First, the Court considers how *Torres* affects the analysis of whether Officer Adgar

14  violated one of Johnson's constitutional rights.  In *Torres*, four New Mexico State Police officers

15  sought to execute an arrest warrant in Albuquerque for a woman accused of white collar crimes

16  and "having been involved in drug trafficking, murder, and other violent crimes."  *Torres*, 141 S.

17  Ct. at 994.  Officers attempted to speak with Torres in the parking lot of the complex where they

18  were executing the warrant, although the officers concluded prior to approaching her that she was

19  not the target of the warrant.  *Id.*  Experiencing methamphetamine withdrawal, Torres did not

20  notice the officers' badges, seeing only their guns and believing that someone was trying to

21  carjack her.  *Id.*  She hit the gas to try to escape, and officers fired at her 13 times, striking her

22  twice in the back.  *Id.*  Torres drove to a nearby parking lot, asked someone to report the attempted

23  carjacking, stole a different car, and drove 75 miles to a hospital.  *Id.*  After Torres was airlifted

24  back to Albuquerque for additional hospital care, she was arrested.  *Id.*  Torres brought claims

25  against the officers under § 1983, alleging that the excessive force made the shooting an

26  unreasonable seizure under the Fourth Amendment.  *Id.*  The district court granted summary

27  judgment to the officers on the basis of Tenth Circuit precent holding that "no seizure can occur

28  unless there is a physical touch or show of authority," and that "such physical touch (or force)

7

United States District Court
Northern District of California

must terminate the suspect's movement" or otherwise give rise to physical control over the suspect. *Id.*

The Supreme Court reversed. After examining the common law meaning of "arrest" and "seizure," the Court concluded that "[a] seizure requires the use of force *with intent to restrain*," even if the person does not submit and is not subdued. *Torres*, 141 S. Ct. at 998. The inquiry about whether there is an intent to restrain is "objective" and does not look to the subjective motivations of the police officer or the "subjective perceptions of the seized person." *Id.* at 999. The Court stressed that the rule it was announcing "does not transform every physical contact between a government employee and a member of the public into a Fourth Amendment seizure." *Id.* at 998. Because intent to restrain is required, neither "accidental force" nor "force intentionally applied for some other purpose" would satisfy the rule. *Id.* The Court was considering "only force used to apprehend" with a firearm and declined to "opine on matters not presented here—pepper spray, flash-bang grenades, lasers, and more." *Id.* The Court concluded by emphasizing that the rule it announced was "narrow," and that whether a seizure occurred "is just the first step in the analysis" because the Fourth Amendment only prohibits "unreasonable" seizures. *Id.* at 1003. "All we decide today is that the officers seized *Torres* by shooting her with intent to restrain her movement. We leave open on remand any questions regarding the reasonableness of the seizure, the damages caused by the seizure, and the officers' entitlement to qualified immunity." *Id.*

The Court concludes that *Torres* announced the rule that "application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres*, 141 S. Ct. at 1003. The Court characterized this rule as the "first step in the analysis" of Torres' excessive force claim and left open for remand the question of whether the seizure itself was reasonable. *Id.* The decision in *Torres* post-dates this case. But to the extent *Torres* further explicated the law of when a seizure occurs, the Court finds that even under the new formulation, Johnson has sufficiently alleged that a seizure occurred.

Johnson has alleged that City policy prohibited the use of the 40mm projectile impact weapon used against Johnson for any crowd control purpose. FAC ¶ 14. Johnson says that he

1   heard no order to disperse or declaration that the assembly was unlawful prior to being fired upon.

2   *Id.* ¶¶ 15-18.  Johnson further alleges that Officer Adgar was equipped with zip ties, that Johnson

3   was shot while he was attempting to flee from the scene, and that the projectile impact impaired

4   his movement.  *Id.*  Drawing inferences in Johnson's favor, these are sufficiently plausible

5   allegations supporting the inference that by firing at Johnson, Officer Adgar had an objective

6   "intent to restrain" him.  *Torres*, 141 S.Ct. at 1003.

7        Officer Adgar responds that these allegations are instead consistent with an intent to

8   disperse protestors rather than to restrain Johnson.  MTD at 4.  In support, Officer Adgar cites

9   three cases where courts found no intent to restrain:  an unpublished and thus nonprecedential

10  Ninth Circuit case involving striking a plaintiff with a baton while officers "push[ed] protestors

11  off [a] freeway," *Jackson-Moeser v. Armstrong*, 765 F. App'x 299 (9th Cir. 2019), and several

12  out-of-circuit cases involving the use of tear gas on reporters and protestors, *Quraishi v. St.*

13  *Charles Cnty.*, 986 F.3d 831, 840 (8th Cir. 2021); *Buck v. City of Albuquerque*, 2007 WL

14  9734037, at *31 (D.N.M. Apr. 11, 2017); *Molina v. City of St. Louis*, 2021 WL 1222432, at *11

15  (E.D. Mo. Mar. 31, 2021).  The Court finds these cases inapposite.  Unlike tear gas or pepper

16  spray, which disperses within an environment through the air, Johnson alleges that he was struck

17  with a foam projectile that injured his leg and hobbled him.  And in *Jackson-Moeser*, in which

18  batons were used, the court decided the seizure issue on summary judgment with the full benefit of

19  discovery.  *Jackson-Moeser*, 765 F. App'x at 299.  Finally, and contrary to the suggestion in some

20  of the cases that Officer Adgar cites—which predate *Torres*—that Johnson actually escaped does

21  not mean that there was no "seizure" under the Fourth Amendment.  *See Torres*, 141 S. Ct. at

22  1003; *contra, e.g.*, *Jackson-Moeser*, 765 F. App'x at 299 (pointing out that Jackson-Moeser "ran

23  away" and "no officers told her to stop or followed her as she left the freeway"); *Quraishi*, 986

24  F.3d at 840 (noting that the reporters' "freedom to move was not terminated or restricted").  The

25  Court declines to draw an inference against Johnson that the objective intent of Officer Adgar was

26  to cause him to flee when, based on Johnson's allegations, there is a plausible inference that

27  Officer Adgar's objective intent was to restrain Johnson's movement.

28        Accordingly, based solely on the allegations in the operative complaint, Johnson has

1    plausibly pled that he was seized because Officer Adgar had an objective intent to restrain him by

2    firing the foam baton at him.

3                    *b.*   Graham *Factors*

4           Second, the Court finds that Johnson's allegations in the operative complaint adequately

5    allege an unreasonable and excessive use of force under the *Graham* factors.  Analysis of he

6    reasonableness of force under the Fourth Amendment involves a totality of the circumstances

7    inquiry.  Courts first consider the governmental interests at stake, such as "(1) the severity of the

8    crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or

9    others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by

10   flight." *Torres v. Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (citing *Graham*, 490 U.S. at 396).

11   On the other side, courts also consider the plaintiff's interests by looking to the "type and amount

12   of force inflicted" and "the severity of injuries" experienced by the plaintiff.  *Felarca v.*

13   *Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018).

14          The Court finds that Johnson's allegations plausibly establish that Officer Adgar used

15   excessive force.  The Court first looks to governmental interests at stake.  On the first *Graham*

16   factor—the severity of the crime at issue—Johnson has alleged that he was participating in

17   protected First Amendment activity, that no curfew was in place when he was protesting, that the

18   protestors were not ordered to disperse prior to Officer Adgar firing the projectile at him, and that

19   he was never charged with any crime related to the protests.  FAC ¶¶ 12, 13, 18, 19.  The most that

20   Officer Adgar points to is that a bottle was thrown at officers, MTD at 8, but Johnson has alleged

21   that he did not throw it and that it landed on the ground without harming any officer, FAC ¶ 16.

22   On the second factor—whether Johnson posed an immediate threat to the safety of the officers or

23   others—Johnson has alleged that he was already running away from the scene when Officer Adgar

24   fired the projectile at him.  *Id.*  On the third factor—resisting or evading arrest—although Johnson

25   was moving away from the scene, he has also alleged that he was not charged with any crime in

26   connection with the protests.  FAC ¶ 19.

27          As to Johnson's interest factors—the type and amount of force used and the injuries

28   inflicted—they further weigh in favor of a finding of excessive force based on his allegations.

United States District Court
Northern District of California

United States District Court
Northern District of California

Johnson has alleged that despite his peaceful protest, Officer Adgar fired a foam projectile at him. FAC ¶ 16.  Although that foam projectile is a "less lethal" weapon, Johnson alleges that the projectile left a large circular-shaped injury that caused him to "hobble" and "limp away." *Id.* ¶ 17.  The impact resulted in formation of a blood clot and has caused Johnson multiple trips to the emergency room and ongoing (and potentially lifelong) treatment for blood clots. *Id.* ¶ 20.  Johnson's ability to walk and exercise has been seriously impaired. *Id.* ¶ 21.  Each of these factors suggests that the force used was unreasonable. *Nelson v. Davis*, 685 F.3d 867, 878–79 (9th Cir. 2012) (excessive force where nonviolent plaintiff partygoer was struck with pepperball in eye, causing multiple surgeries, temporary blindness, and a permanent loss of visual acuity).

Officer Adgar points to *Felarca*, 891 F.3d at 809, as counseling against a finding of excessive force under *Graham*.  In *Felarca*, the Ninth Circuit held that officers did not use excessive force when they used "jabs with a baton" to clear resisting protestors from an encampment at the University of California, Berkeley. *Id.* at 817.  The university had previously warned the campers that camping was not permitted on campus, and police department policy permitted the use of batons to "disperse" individuals. *Id.*  That makes *Felarca* unlike this case, at least as alleged in Johnson's pleading.  Johnson has alleged that he was moving away from the protest as he was shot, that officers did not announce that the gathering was unlawful prior to shooting him, and that City policy prohibited the use of the weapon used on him for crowd control purposes.  FAC ¶¶ 14, 16, 18.  *Felarca* accordingly is not of help to Officer Adgar on the excessive force inquiry.

Considering the totality of the circumstances based on Johnson's pleading, he has adequately alleged an unreasonable use of force under *Graham*.  Accordingly, at this stage of the case, Johnson adequately pleads the violation of a constitutional right.

### ii.   Prong Two – Clearly Established Right

At prong two of the qualified immunity analysis on a motion to dismiss, Johnson must "plead[] facts showing . . . the right [violated] was 'clearly established' at the time of the challenged conduct." *Wood*, 572 U.S. at 757.  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable

11

1    official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572

2    U.S. at 779. Both parties primarily point to *Nelson v. Davis*, 685 F.3d 867 (9th Cir. 2012), as the

3    relevant case. Johnson argues that *Nelson* clearly establishes that by firing a less lethal projectile

4    at Johnson in the midst of an allegedly unlawful assembly where Johnson was not an imminent

5    threat to officers, resulting in an injury restricting Johnson's movement, Officer Adgar seized

6    Johnson and used excessive force against him. Opp. at 13–15. Officer Adgar says that *Nelson* is

7    not sufficiently similar to this case and so did not clearly establish that his actions violated the law.

8    MTD at 5; Reply at 2–3.

9         In *Nelson*, the plaintiff, a student at the University of California, Davis, was among about

10    1,000 people at an apartment complex near the U.C. Davis campus attending what one partygoer

11    called "the biggest party in history." *Nelson*, 685 F.3d at 872–73. Officers arrived at the party

12    and began telling people they needed to leave. *Id.* at 873. After this individual approach was

13    ineffective, officers arrived in a police car, but the car was "soon overwhelmed by the crowd,

14    including some individuals who threw bottles at the vehicle." *Id.* Officers returned in riot gear

15    armed with pepperball guns and "prepared to disperse the crowd." *Id.* Officers entered the party

16    and gave dispersal orders, but recognized that they could not be heard over the "raucous" noise of

17    the party. *Id.* Officers then gathered in front of a breezeway in the apartment complex that was a

18    "very narrow and confined space." *Id.* A group of students, including the plaintiff, were

19    attempting to leave, but "officers blocked their means of egress and did not provide any

20    instructions for departing from the complex," even after the students expressly asked to leave and

21    held up their hands. *Id.* at 874. Although some bottles were being thrown in the area, the officers

22    saw that no one from the plaintiff's group threw anything at them. *Id.* Officers then fired at the

23    group of students including the plaintiff, who was struck in the eye and fell to the ground writhing

24    in pain. *Id.* The plaintiff suffered temporary blindness, had to undergo multiple surgeries to repair

25    an ocular injury, and had to withdraw from U.C. Davis because he lost his athletic scholarship. *Id.*

26    On the plaintiff's § 1983 claim for excessive force in violation of the Fourth Amendment, the

27    district court denied the officer's bid for summary judgment on the basis of qualified immunity.

28    *Id.* at 874–75.

United States District Court
Northern District of California

On interlocutory appeal, the Ninth Circuit affirmed.  *Nelson*, 685 F.3d at 875–87.  The Ninth Circuit first found that the plaintiff was seized under the Fourth Amendment.  "[T]he U.C. Davis police officers took aim and intentionally fired in the direction of a group of which [the plaintiff] was a member.  [He] was hit in the eye by a projectile filled with pepper spray and, after being struck, was rendered immobile."  *Id.* at 875–76.  Because the plaintiff was "both an object of intentional governmental force and his freedom of movement was limited," he was seized under the Fourth Amendment.  *Id.* at 876.  The Ninth Circuit rejected the officers' arguments that they did not individually or intentionally target the plaintiff, that they intended to hit the area around plaintiff rather than plaintiff himself, and that they intended to disperse the crowd rather than arrest anyone.  *Id.* at 876–78.  The Ninth Circuit then considered the *Graham* factors and found that the seizure was unreasonable.  *Id.* at 878–83.

The Court finds that *Nelson* clearly established that firing a less lethal projectile that risked causing serious harm at an individual who was not an imminent threat to officers in the midst of an allegedly unlawful assembly, resulting in an injury restricting the movement of that individual, amounts to a seizure and an excessive use of force.[2]  *Nelson* is strikingly similar to this case.  In both *Nelson* and this case, police confronted large crowds that they claimed needed to be dispersed.  Officers were armed with less lethal weapons—pepperball guns in *Nelson* and 40 mm weapons in this case.  Individuals were throwing water bottles at officers, although officers never saw the eventually injured plaintiff throw a bottle at them.  A police officer then intentionally fired his less lethal weapon at the plaintiff, whose ability to move was immediately restricted by the impact of the weapon's projectile.  The plaintiff suffered severe injuries, requiring multiple medical procedures and incurring permanent damage to their health.  The Ninth Circuit in *Nelson*, published almost eight years prior to the protests at issue in this case, was quite clear:  the actions

---

[2] Further, the Ninth Circuit did not announce a new standard in *Nelson*, instead finding that the law was already clearly established by its prior rulings in *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001), and *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994).  *See Nelson*, 685 F.3d at 884.

1    of the police in *Nelson* "unquestionably constituted a seizure under the Fourth Amendment" and

2    "the force used by the government was unreasonable and resulted in a violation of the Fourth

3    Amendment." *Nelson*, 685 F.3d at 877–78, 883.  Officer Adgar thus had "fair notice that [his]

4    conduct was unlawful." *Nicholson*, 935 F.3d at 690.

5         Officer Adgar's efforts to avoid *Nelson*'s clearly established law at this stage of the case

6    are unavailing.  Officer Adgar first zeros in on one factual distinction between *Nelson* and this

7    case:  that officers blocked the *Nelson* plaintiff's means of egress through the breezeway, rather

8    than letting him go free as officers did here.  Reply at 3.  The Court finds that this fact alone is

9    insufficient to make this case different enough from *Nelson* at the pleading stage.  The significant

10   factual similarities between *Nelson* and this case put Officer Nelson "on notice" that his conduct

11   constituted a seizure and amounted to excessive force.

12        Officer Adgar also argues that *Nelson* predates *Torres*, "and so did not have occasion to

13   apply its rule regarding an objectively manifested intent to seize." Reply at 2.  Officer Adgar cites

14   several out-of-circuit cases applying *Torres*, arguing that they indicate lack of clarity in the law

15   and so preclude a finding that the law was clearly established in May 2020.  Reply at 2, 3-5 (citing

16   *Quraishi*, 986 F.3d at 831; *McCoy*, 341 F.3d at 600; *Slocum v. Palinkas*, 50 F. App'x 300 (6th Cir.

17   2002); *Black Lives Matter D.C. v. Trump*, 2021 WL 2530722 (D.D.C. June 21, 2021); *Molina*,

18   2021 WL 1222432; *Buck*, 2007 WL 9734037; and *Gause v. City of Philadelphia*, 2001 WL

19   1251215 (E.D. Pa. Sept. 27, 2001)).  Both arguments are unpersuasive.  *Torres* post-dates the

20   events of this case, and so could not have undermined *Nelson*'s clearly established law at the time

21   Officer Adgar acted.  *See NAACP of San Jose/Silicon Valley v. City of San Jose*, --- F. Supp. 3d ---

22   -, 2021 WL 4355339, at *14 (N.D. Cal. Sept. 24, 2021) (*Torres* did not undermine applicability of

23   *Nelson*).  To the extent Officer Adgar argues that the Supreme Court's choice to take up and

24   decide *Torres* itself indicates lack of clarity in the law, the Court declines to read the tea leaves as

25   to why the Supreme Court agreed to hear a case.  Because *Nelson* was the clearly established law

26   in the Ninth Circuit at the time of the events of this case, the out-of-circuit cases cited by Officer

27   Adgar (some of which also post-date Officer Adgar's actions) are inapposite.  *See Cmty. House,*

28   *Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (Ninth Circuit courts look to "Supreme

United States District Court
Northern District of California

1    Court and Ninth Circuit law at the time of the alleged act" to determine if a right is clearly

2    established).[3]

3                                              *        *        *

4            Accordingly, the Court finds that Officer Adgar is not entitled to qualified immunity at this

5    juncture on Johnson's § 1983 claim for violation of the Fourth Amendment.  His motion to

6    dismiss the claim on this basis is DENIED.  Because this finding is based solely on the allegations

7    in Johnson's pleading, this finding is without prejudice to Officer Adgar raising a qualified

8    immunity defense to this claim later in this case.

9            **B.    Claim 2 – § 1983 / First Amendment (Officer Adgar)**

10           Johnson's second claim against Officer Adgar is a § 1983 claim for retaliatory use of force

11   under the First Amendment.  FAC ¶¶ 39–47.  Officer Adgar argues that he is entitled to qualified

12   immunity on this claim because he did not violate clearly established First Amendment law.  MTD

13   at 12–16.  Officer Adgar also claims that Johnson has not pled that he acted with discriminatory

14   purpose and targeted Johnson based on his political affiliation or expression.  *Id.*  Johnson

15   responds that viewpoint discrimination is not a necessary element of his claim and that he

16   adequately alleges retaliatory motive.  Opp. at 21–23.

17           The Court finds it unnecessary to reach Officer Adgar's qualified immunity argument

18   because it agrees with him that Johnson has not adequately alleged facts supporting an inference

19   that Officer Adgar acted with discriminatory animus.  To succeed on a First Amendment

20   retaliation claim, Johnson is required to show (1) he was engaged in a constitutionally protected

21   activity, (2) Officer Adgar's actions would "chill a person of ordinary firmness from continuing to

22   engage in the protected activity," and (3) "the protected activity was a substantial or motivating

23   factor in [Officer Adgar's] conduct."  *Index Newspapers LLC v. United States Marshals Serv.*, 977

24   _____

25   [3] Even looking to *Torres*, the Supreme Court expressly "declined to opine" on whether certain uses

26   of certain weapons, such as "pepper spray, flash-bang grenades, lasers, and more," constituted a

27   seizure.  *Torres*, 141 S.Ct. at 998.  Accordingly, *Torres* did not consider the use of the types of

28   weapons at issue in this case or *Nelson* and thus does not undermine the law *Nelson* established.

F.3d 817, 827 (9th Cir. 2020).  This dispute goes to the third element—whether Johnson's protected activity was "a substantial or motivating factor" in Officer's Adgar's response.[4]  This element "may be met with either direct or circumstantial evidence" and often "involves questions of fact that normally should be left for trial."  *Id.* at 827 (citing *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)).

The Court agrees with Officer Adgar that Johnson has not offered sufficient allegations to support an inference that his protected activity was "a substantial or motivating factor" in Officer Adgar's conduct.  Johnson has alleged that after a bottle was thrown by an unknown protestor, Officer Adgar and others began advancing against the protestors and shortly afterward used less lethal force against him, causing his injury.  FAC ¶¶ 16–18.  But these allegations do not support the inference that Johnson's protected activities were the reason Officer Adgar used force against him.  Johnson expressly alleges that he did not throw the bottle at officers.  He does not allege that Officer Adgar holds views or made comments against the protests or against Johnson, or that officers particularly targeted him and other Black Lives Matter protestors while not targeting counterprotestors.  The plausible inference from Johnson's allegations is that Officer Adgar fired in response to the water bottle being thrown.  While this force may been a seizure accomplished with excessive force under the Fourth Amendment, that does not mean it was retaliatory in violation of the First Amendment.

In response, Johnson makes two arguments, but neither of them is persuasive.  First, he says that "[t]he use of indiscriminate weapons against all protestors—not just the violent ones— supports the inference that [police] actions were substantially motivated by . . . protected activity." Opp. at 22–23 (quoting *Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020) and citing *Anti Police-Terror Project v. City of Oakland*, 477 F.

---

[4] Because the Court finds that Johnson has not sufficiently alleged that his protected activity was a "substantial or motivating factor" for Officer Adgar's conduct, it need not address whether "viewpoint discrimination" is the proper framing of one requirement to state a First Amendment retaliation claim.

Supp. 3d 1066, 1088 (N.D. Cal. 2020)).  But Johnson's allegations do not support that inference here.  Both of the cases Johnson cites involved extensive allegations of broad and repeated uses of projectiles, tear gas, and police tactics over the course of several days against mostly peaceful protestors.  For example, in *Anti-Police Terror Project*, the plaintiffs alleged that the Oakland Police Department and other mutual aid partners "used a variety of impermissible tactics against peaceful protestors, often without warnings, causing physical injuries and trauma and discouraging members of the Oakland community from participating in lawful protest activities."  477 F. Supp. 3d at 1070–71 (internal quotations omitted).  These included (1) declaring an unlawful protest through an inaudible loudspeaker and then using flash bang grenades, tear gas canisters, and rubber bullets on demonstrators; (2) using stun guns and batons; (3) targeting journalists and medics; (4) "kettling" peaceful protestors at a high school while dressed in full riot gear prior to a curfew and using tear gas, flash bang grenades, and rubber bullets as the protestors tried to flee but were impeded; and (5) using tear gas to force protestors to remove their masks and risk exposure to COVID-19 (including from unmasked officers).  *Id.* at 1071 (citing the operative complaint); *see also NAACP of San Jose/Silicon Valley*, 2021 WL 4355339, at *11 (allegations that officers shot impact munitions and chemical weapons "at people who were kneeling on the ground praying, standing with their hands up, playing the guitar, trying to walk away, or otherwise peacefully demonstrating," and that officers at the protest were "making jokes about George Floyd's death" and "taking a group selfie").  In contrast, the allegations in the operative complaint about the tactics at the protest Johnson attended concern only Johnson's individual experience, the number of less lethal rounds used at the protest, a few isolated instances of injuries to protestors, and the actions of a single City police officer.  *See* FAC ¶¶ 15–22 (Johnson's experience), 27 (brief statements concerning two other protestors), 28 (number of less lethal rounds used), 29 (Officer Jared Yuen).  These allegations alone are insufficient for the Court to draw the same inference as was drawn in the two cases Johnson cites, which included much more extensive allegations of police violence.

Second, Johnson also points to his allegations about animus towards the Black Lives Matter movement by current and former members of the City police department and says they

support an inference of retaliation.  Opp. at 23 (citing FAC ¶ 30).  The Court does not find that to be a reasonable inference.  The operative complaint does not allege that Officer Adgar holds the views of the two officers mentioned or of the San Jose Police Officers Association.  Just because a few others in the police department may have, in a different context prior to the protest, expressed views hostile toward the Black Lives Matter movement, does not create a reasonable inference that Officer Adgar shared those views *and* acted upon them in targeting Johnson.  *See Cangress v. City of Los Angeles*, 2016 WL 5946878, at *6 (C.D. Cal. Mar. 22, 2016) (no retaliation claim stated where plaintiffs' evidence of retaliation was not specific to the officers who allegedly acted against them).

Accordingly, the motion to dismiss Johnson's § 1983 claim against Officer Adgar based on the First Amendment is GRANTED WITH LEAVE TO AMEND.  Although the Court cannot draw the inference Johnson seeks based on his current allegations, he may be able to offer additional allegations that would warrant that inference.  If he attempts to do so in an amended complaint, the Court would also have to analyze Officer Adgar's argument that he is entitled to qualified immunity on the claim.

### C.    Claims 1 and 2 – *Monell* (City of San Jose)

Johnson's first two claims under § 1983 are also asserted against the City based on liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  The City argues that Johnson has not adequately alleged that any City policy caused excessive force or retaliation against him or that the City failed to adequately train its employees.  *See* MTD at 8–12 (claim 1), 15–16 (claim 2).  Johnson responds that he has adequately alleged the City's liability under the custom or policy and failure to train species of *Monell* liability.  Opp. at 27.

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official…policy or custom."  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. at 694).  "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, … and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single

United States District Court
Northern District of California

instance indicates at least deliberate indifference of the municipality[.]" *Id.* at 1153 (internal citations omitted). "A municipality may [also] be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Because Johnson says that his claims against the City are based on a failure to train and unwritten customs or practices, the Court analyzes only those two species of *Monell* liability.

### i. Failure to Train

"Failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. And only under such circumstances does the failure to train constitute "a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). As such, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted).

The Court finds that Johnson's allegations are insufficient. Johnson implicitly admits that

United States District Court
Northern District of California

he has not sufficiently alleged a "pattern of similar constitutional violations by untrained employees" to support a failure to train claim.[5]  *Connick*, 563 U.S. at 62.  Instead, he says that this is the rare case where the violation of federal rights is such a "highly predictable consequence of failure to equip law enforcement officers with specific tools to handle recurring situations" such that other incidents are not necessary.  Opp. at 24–25 (quoting *M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1082 (N.D. Cal. 2014)).  The Court finds that this is not such a case based on Johnson's own allegations.  Johnson has alleged that there was in fact training on the use of less lethal weapons, although it was infrequent and insufficient.  *See* FAC ¶¶ 23–26.  If these allegations sufficed to state a claim under *Monell* for failure to train on the basis of a single incident, then municipalities would be liable for failure to train in all instances where only a single incident occurred (regardless of whether any training occurred at all).  This is inconsistent with the principle that only in "rare" cases can a single incident form the basis for failure to train liability.  *Connick*, 563 U.S. at 64 (characterizing those single incidents as those in which "the consequences of failing to train [are] so patently obvious").  Johnson's *Monell* claim cannot be presently sustained on a failure to train theory.[6]

---

[5] Although Johnson points to videos of Officer Yuen taken on May 29, 2020, MTD at 26 (citing FAC ¶¶ 27, 29), Johnson fails to allege that anything depicted in the videos put the City sufficiently on notice within one day of Officer Adgar's actions that it needed to institute additional training on the use of less lethal weapons.  These allegations similarly cannot support any ratification theory of *Monell* liability because the alleged failure to immediately condemn Officer Yuen's actions does not amount to a "conscious, affirmative choice" to *endorse* his actions.  *See Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992); *contra* Opp. at 26 (briefly raising ratification).

[6] Although discussed at the hearing, *see* 12/17 Hrg. Tr. at 17:2–18, 19:7–13, allegations about an after-action report issued by the City following the George Floyd protests are not in the operative complaint.  Of course, a report issued after the protests could not have put the City on notice prior to the protests about a failure to adequately train personnel.

1

### ii.    Custom or Practice

2        A municipality may be held liable on the basis of an unconstitutional policy if a plaintiff

3  can "prove the existence of a widespread practice that, although not authorized by written law or

4  express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage"

5  with the force of law.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes*

6  *v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).  "Liability for improper custom may not be

7  predicated on isolated or sporadic incidents"—rather, "[t]he custom must be so persistent and

8  widespread that it constitutes a permanent and well settled city policy."  *Trevino v. Gates*,

9  99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted).  In order to withstand a motion to

10  dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic

11  recitations of the existence of unlawful policies, customs, or habits."  *Warner v. Cty. of San Diego*,

12  No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011).

13        At oral argument, counsel for Johnson stated that "the main theory" of *Monell* liability was

14  failure to train.  12/17 Hrg. Tr. at 17:3–4.  There was some discussion of a policy or custom

15  theory, *see id.* at 19:15–20:7.  To the extent that Johnson attempts to allege that theory of *Monell*

16  liability, his allegations are presently insufficient.  "An isolated or sporadic incident . . . cannot

17  form the basis of *Monell* liability for an improper custom."  *Saved Mag. v. Spokane Police Dep't*,

18  19 F.4th 1193, 1201 (9th Cir. 2021) (citing *Trevino*, 99 F.3d at 918) (cleaned up).  As under his

19  failure to train theory, Johnson has not sufficiently alleged any other examples of the use of less

20  lethal weapons on protestors, and so his *Monell* claim cannot proceed on this theory as presently

21  pled.

22                        *        *        *

23        Accordingly, the motion to dismiss claim 1 and claim 2 against the City are GRANTED

24  WITH LEAVE TO AMEND.  While counsel for Johnson have alluded to similar incidents the day

25  prior to Officer Adgar shooting Johnson with the 40 mm weapon, they are not adequately alleged

26  in the complaint.  To the extent Johnson can provide allegations about that or other such incidents

27  as evidence of the City's custom or practice or a failure to train, he may do so in an amended

28  complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

### D.    Claim 3 – Bane Act

Johnson's third claim against Officer Adgar and the City is for violation of the Bane Act, Cal. Civ. Code §§ 52.1, 52.  FAC ¶¶ 48–52.  Defendants argue that this claim must be dismissed for the same reasons as the § 1983 claim for violation of the Fourth Amendment must be dismissed.  *See* MTD at 3 (discussing the Bane Act concurrently with the first § 1983 claim).  Johnson argues that he has adequately alleged his Bane Act claim.  Opp. at 27–28.

Under the Bane Act, a plaintiff can seek damages "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(b)-(c).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  *Simmons v. Superior Ct.*, 7 Cal. App. 5th 1113, 1125 (2016).  A Bane Act claim requires a showing of specific intent to violate protected rights, which can be satisfied by "[r]eckless disregard of the 'right at issue.'"  *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017).

The Court finds that, for similar reasons as discussed in its analysis of Johnson's § 1983 claims, the Bane Act claim is adequately pled.  While it is "incorrect that proving a Fourth Amendment violation vicariously triggers Bane Act liability," *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018), the Court finds that Johnson's allegations in support of the excessive force claim against Officer Adgar meet the requirements to allege a specific intent to violate Johnson's rights under the Bane Act.  *See Ochoa v. City of San Jose*, 2021 U.S. Dist. LEXIS 226380, at *50–51 (N.D. Cal. Nov. 17, 2021) (allegations that supported excessive force claim satisfied recklessness standard required to meet requirements in *Cornell*).  The operative complaint alleges that Officer Adgar fired his the foam baton at Johnson, even though he was running away from officers and no unlawful assembly had yet been declared, leaving a large

22

1    circular injury and forcing Johnson to seek ongoing medical treatment.  FAC ¶ 16.  Those

2    allegations suffice at the pleading stage.

3          As such, the motion to dismiss the Bane Act claim is DENIED.

4          **E.    Claim 4 – Battery**

5          Johnson's fourth claim against Defendants is for battery.  FAC ¶¶ 53–58.  Defendants

6    move to dismiss this claim for the same reasons as they move to dismiss the § 1983 claim for

7    violation of the Fourth Amendment.  MTD at 16.  They also argue that an officer's use of force

8    against a person who is a part of an unlawful assembly is a privileged act under California law.  *Id.*

9    Johnson argues that because the § 1983 claim for violation of the Fourth Amendment survives, his

10   battery claim does too, and says that he has alleged that no unlawful assembly was declared prior

11   to Office Adgar shooting him.  Opp. at 28–29.

12         The Court agrees with Johnson that his battery claim is adequately pled.  First, because the

13   Court has already found that Johnson adequately alleges his first § 1983 claim, dismissal of the

14   battery claim is not warranted on that basis.  Second, Defendants' argument that Officer Adgar's

15   actions were privileged under California law is unpersuasive.  Defendants cite no case authority

16   finding conduct similar to that alleged here to be privileged.  Defendants do cite the Restatement

17   (Second) of Torts § 141 as authority that a police officer is privileged to use force against another

18   "for the purpose of terminating or preventing the renewal of an affray or an equally serious breach

19   of the peace."  MTD at 16.  Even assuming that privilege as articulated in the Restatement is an

20   accurate statement of California law, applying it here at this stage of the case would require

21   ignoring Johnson's allegations.  Johnson has alleged that no unlawful assembly was declared prior

22   to Officer Adgar shooting him and that only a water bottle had been thrown toward officers (and

23   not by Johnson).  FAC ¶¶ 18–19.  Those allegations, assumed to be true, mean that there was no

24   "affray or equally serious breach of the peace," which the Restatement defines as when "two or

25   more persons [are] engaged in mutual combat or in an attack upon a third person" or something

26   that "cause[s] or threaten[s] a disturbance of the public order equal to that caused by" such attacks

27   or combat.  Restatement (Second) of Torts § 141 cmt. a.

28         Accordingly, the motion to dismiss the battery claim is DENIED.

United States District Court
Northern District of California

23

1    **F.    Claim 5 – Negligence**

2        Johnson's fifth claim against Defendants is for negligence.  *See* FAC ¶¶ 59–63.

3    Defendants move to dismiss this claim, arguing that (1) they are immune from liability under the

4    California Government Code and (2) cannot assert a negligence theory based on the City's alleged

5    failure to train.  MTD at 17–18.  Johnson says that the Government Code immunity does not apply

6    to a claim for excessive force.  Opp. at 29–30.  Johnson does not expressly defend a negligence

7    theory based on a failure to train, instead saying that the claim is for negligent use of force and that

8    the City can be vicariously liable under California law.  *Id.*

9        The Court agrees with Johnson that he adequately states a negligence claim because the

10   discretionary act immunity in California Government Code § 820.2 does not apply.  That

11   provision immunizes public officials from liability "resulting from [an] act or omission where the

12   act or omission was the result of the exercise of discretion vested in [the official]."  Cal. Gov't

13   Code § 820.2.  "But it has been long established that this provision does not apply to officers who

14   use unreasonable force" in effectuating a seizure.  *Blankenhorn v. City of Orange*, 485 F.3d 463,

15   487 (9th Cir. 2007) (citing *Scruggs v. Haynes*, 252 Cal. App. 2d 256 (1967)); *see also Sharp v.*

16   *Cnty. of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) (immunity does not extend to "operational

17   decision[s] by the police purporting to apply the law").  Because the Court has found that

18   Johnson's § 1983 claim for a seizure accomplished through excessive force has been adequately

19   alleged, § 820.2 immunity does not apply here and the negligence claim may proceed against

20   Officer Adgar and the City.  *See Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 216 (1991)

21   (governmental entity can be held vicariously liable under California law "when a police officer

22   acting in the course and scope of employment uses excessive force or engages in assaultive

23   conduct") (citing cases).

24        The motion to dismiss Johnson's negligence claim is DENIED.

25   **G.    Claim 6 – California Public Records Act**

26        Johnson's six claim is against the City for violation of the California Public Records Act,

27   Cal. Gov't. Code § 6252 ("CPRA").  FAC ¶¶ 64–81.  Johnson claims that he made requests under

28   the CPRA, including for body cam footage and internal police department communications about

the protests, to the City, but that the City has (1) failed to produce all relevant responsive records and (2) made overbroad claims of exemptions under relevant California statutes. *Id.* The City argues that (1) this claim must be brought in state court; (2) even if it can be brought in federal court, that the Court should decline to exercise supplemental jurisdiction; and (3) Johnson is not entitled to the records he seeks. *See* MTD at 19–21. Johnson responds that the Court should exercise supplemental jurisdiction over the claim and that he has adequately pleaded the claim. *See* Opp. at 31–36.

The Court will decline supplemental jurisdiction over the CPRA claim. California Government Code section 6258 specifies that "[a]ny person may institute proceedings for injunctive or declaratory relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records" under the CPRA. Government Code section 6259 says that a court shall order disclosure of records or issue an order to show cause why records should not be disclosed when "it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated" that records are being impermissibly withheld. The Court notes that there is somewhat of a split of authority over whether federal courts may exercise supplemental jurisdiction over CPRA claims given the language in section 6259, with more courts finding that state courts do not have exclusive jurisdiction. *Compare Brooks v. Vallejo City Unified Sch. Dist.*, 2013 WL 943460, at *4 (E.D. Cal. Mar. 11, 2013) ("The exclusive remedy for challenges under the CPRA is to file a writ of mandamus in state court . . . ."), *with Calonge v. Cty. of San Jose*, 523 F. Supp. 3d 1101, 1107 (N.D. Cal. 2021) (exercising supplemental jurisdiction over CPRA claim). Recent California Court of Appeal authority suggests that jurisdiction is not limited to the superior court of the county where the records are held. *See California Gun Rts. Found. v. Superior Ct.*, 49 Cal. App. 5th 777, 790 (2020) (CPRA "does not limit jurisdiction over a CPRA dispute to the superior court of the county where the disputed records are located").

Assuming the Court could exercise supplemental jurisdiction over the CPRA claim, the Court nevertheless declines to do so. A court may decline to exercise supplemental jurisdiction over a claim if it "raises a novel or complex issue of State law" or if, "in exceptional

circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C.

§ 1367(c)(1), (4). The Court finds that both principles apply here. Entitlement to records under

the CPRA presents a complex issue of California law. The Court would be required to adjudicate

the breadth of Johnson's requests and whether certain types of documents were properly withheld

under exemptions in the California Government Code and the California Penal Code that were

only recently enacted, among other issues of state law. State courts are better positioned to

adjudicate those issues. The Court additionally finds that "other compelling reasons" support

declining jurisdiction. If Johnson pursues his CPRA claim in this Court, in his best case scenario

he would not be able to obtain a ruling granting his desired remedy—production of the records he

seeks—until after trial. Johnson's better course is to file a writ of mandate in the relevant superior

court, which would likely provide a more expedited procedure that could provide for production of

records for use in this case.

Accordingly, the Court declines to exercise supplemental jurisdiction over the CPRA

claim. The City's motion to dismiss the CPRA claim is GRANTED WITHOUT LEAVE TO

AMEND. Although leave to amend is not granted, the claim is DISMISSED WITHOUT

PREJUDICE to proceeding in state court.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the motion is GRANTED IN

PART with leave to amend in part and DENIED IN PART. The motion is:

- DENIED as to the first claim against Office Adgar pursuant to 28 U.S.C. § 1983 for violation of the Fourth Amendment;
- GRANTED WITH LEAVE TO AMEND as to the second claim against Officer Adgar pursuant to 28 U.S.C. § 1983 for violation of the First Amendment;
- GRANTED WITH LEAVE TO AMEND as to the first and second claims against the City;
- DENIED as to the third claim for violation of the Bane Act;
- DENIED as to the fourth claim for battery;
- DENIED as to the fifth claim for negligence; and

26

- GRANTED WITHOUT LEAVE TO AMEND as to the sixth claim for violation of the California Public Records Act, but WITHOUT PREJUDICE to proceeding in state court.

Plaintiff SHALL file an amended complaint within 30 days of this order.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this order will result in a dismissal of the deficient claims with prejudice.  Amendment shall not exceed the scope allowed by the Court.  Plaintiff may not add new parties or claims without express leave of Court or agreement by Defendants.

Dated:  March 16, 2022

BETH LABSON FREEMAN
United States District Judge