UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE JOHNSON,<br><br>             Plaintiff,<br><br>      v.<br><br>CITY OF SAN JOSE, et al.,<br><br>             Defendants. | Case No.  21-cv-01849-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 107 |

This action arises out of one of the protests following the May 25, 2020 killing of George Floyd, a Black man, by Minneapolis police officers.  A wave of public demonstrations followed, during which participants across the country protested Mr. Floyd's killing and disproportionate police brutality toward Black people.  Plaintiff Kyle Johnson ("Mr. Johnson"), a Black man, attended one such protest on May 30, 2020 in San Jose, California.  Mr. Johnson brings this suit alleging that Defendants Officer James Adgar ("Officer Adgar") and the City of San Jose (the "City," and with Officer Adgar, "Defendants") engaged in police misconduct during his participation in the protest, and that the misconduct violated his First and Fourth Amendment rights and California statutory and common law.

Presently before the Court is Defendants' Motion for Summary Judgment (the "Motion") on all claims brought by Mr. Johnson in his operative Second Amended Complaint (the "SAC").  *See* Mot., ECF No. 107.  Mr. Johnson opposes the Motion.  *See* Opp'n, ECF No. 116.  Following the completion of briefing on the Motion, the Court heard oral argument on September 21, 2023.  *See* Reply, ECF No. 120; Pl.'s Resp. to Evid. Objs., ECF No. 126; Sept. 21, 2023 Hr'g Tr. ("Tr."), ECF No. 138.  Having considered the governing law and the parties' written and oral arguments, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

United States District Court
Northern District of California

1   I.      BACKGROUND

2       A.      Factual Background

3       The following facts are undisputed unless otherwise noted.

4               1.      The Parties

5       Mr. Kyle Johnson is a Black American man who lives and works in Santa Clara County.

6   *See* Decl. of Kyle Johnson in Opp'n to Mot. ("Johnson Decl.") ¶¶ 2–3, ECF No. 116-7; Decl. of

7   Matthew Pritchard in Supp. of Mot. ("Pritchard Decl."), Exh. 4 ("Johnson Dep."), at 83:8–10,

8   ECF No. 107-1.  Officer James Adgar graduated from the City of San Jose's Police Department

9   ("SJPD") Academy in December 2017, and has been employed as a peace officer with SJPD for

10  about six years.  Decl. of James Adgar in Supp. of Mot. ("Adgar Decl.") ¶¶ 1–2, ECF No. 107-3.

11              2.      The Protests

12      San Jose saw multiple days of protests following the killing of George Floyd, including on

13  May 29, 2020, and May 30, 2020.  *See, e.g.*, Decl. of Jason Dwyer in Supp. of Mot. ("Dwyer

14  Decl.") ¶ 2 & Exh. 2, ECF No. 107-4.  SJPD responded to the protests.  *See* Dwyer Decl., Exh. 2.

15      SJPD officers used several types of weapons while policing the protests, including 40mm

16  and 37mm projectile impact weapons ("PIWs").  *See, e.g.*, Decl. of Lee Tassio in Supp. of Mot.

17  ("Tassio Decl.") ¶ 9 & Exh. 2, ECF No. 105.  The 40mm PIW fires a foam baton with a 40-

18  millimeter diameter at a target.  *See* Tassio Decl., Exh. 2, at 1.

19      Mr. Johnson attended a protest at San Jose's City Hall on May 30, 2020.  Johnson Decl. ¶¶

20  3–4.  Officer Adgar worked at the protests in San Jose on May 29 and May 30, 2020, and on May

21  30 was dispatched to City Hall.  Adgar Decl. ¶¶ 1, 5.  SJPD officers stood in a "skirmish line" in

22  front of protestors on both days.  *See id.* ¶¶ 4–5; *see also* Decl. of Jonathan Byers in Supp. of Mot.

23  ("Byers Decl.") ¶ 2, ECF No. 107-7; Johnson Decl. ¶ 11 (describing a "line of officers").

24              3.      SJPD Training Practices

25      Every SJPD officer must graduate from a police academy that is certified by the California

26  Commission on Peace Officer Standards and Training ("POST").  Decl. of Christopher Sciba

27  ("Sciba Decl.") ¶ 4, ECF No. 107-6.  An officer receives a Basic Certificate after completing the

28  initial academy, which is a 26-week program with approximately 976 hours of training, and

2

finishing SJPD's probationary period.  *Id.* ¶¶ 4, 6.  Officers must complete Continuing Professional Training ("CPT") every two years to maintain their certification.  *Id.* ¶ 4.  Police academies can become certified by POST if they teach the POST minimum standards, which include Learning Domains ("LDs").  *Id.* ¶ 5.  The SJPD police academy teaches the 43 POST LDs, including an LD on objectively reasonable force and the potential for civil and criminal liability and disciplinary action for an officer's failure to intervene to prevent the violation of a person's constitutional rights, as well as additional training, including a four-hour course devoted to PIWs.  *Id.* ¶ 6–7.  The additional PIW course addresses the *Graham v. Connor* factors for objectively reasonable force.  *See* Sciba Decl. ¶ 8.  The CPT courses required by POST and taught by SJPD between 2015 and 2020 include training on use of force, defensive tactics, force options simulator, principles of de-escalation, and de-escalation and tactical communication.  *Id.* ¶ 9.

SJPD officers are also required to read and understand SJPD's Duty Manual.  Tassio Decl. ¶ 4.  The Duty Manual contains provisions concerning, among other issues, crowd control, use of force, and PIWs, including the 37mm launcher, 40mm launcher, and beanbag shotgun.  *Id.* ¶ 9; *see also id.* at Exhs. 1, 2.  SJPD only permits PIW use by officers who have completed an approved training course.  *See id.* at Exh. 2, at 2.  Patrol officers who have completed an approved training course are required to carry either a stun-bag shotgun or 40mm PIW launcher while on duty.  *Id.* A revision to the Duty Manual dated May 22, 2020 provided that "40 mm [PIWs] that do not contain chemical agents may not be used for crowd control purposes."  *Id.* at 2; *see also* Tassio Decl. ¶ 9.  Rather, the 40mm PIW is intended to be fired directly at an individual target, and only when the use of the weapon is objectively reasonable to prevent serious injury.  *See* Tassio Decl., Exh. 2, at 2.

### 4.   Mr. Johnson's Experience at the May 30, 2020 Protest

The parties dispute the time of Mr. Johnson's arrival at the May 30 protest.  Mr. Johnson states in his declaration that he arrived at San Jose's City Hall at approximately 9:53 p.m.  *See* Johnson Decl. ¶ 8.  Defendants rely on Mr. Johnson's deposition testimony to assert that Mr. Johnson arrived at City Hall by 9:10 p.m.  *See* Johnson Dep. 87:3–14.

At 9:19 p.m., an SJPD officer broadcast an order to disperse to the crowd in front of City

United States District Court
Northern District of California

United States District Court
Northern District of California

1 Hall.  *See* Decl. of Daniel Morales in Supp. of Mot. ("Morales Decl."), Exh. 3 ("Video Exh. (R.

2 Vasquez)").  Because the parties dispute the time of Mr. Johnson's arrival at the protest, they also

3 dispute whether Mr. Johnson heard the dispersal order.  *See* Johnson Decl. ¶ 17 ("From the

4 moment I arrived at City Hall, at approximately 9:53 p.m., until after I was struck with a projectile

5 . . . there were no unlawful assembly or dispersal orders given by any police officer.").

6 By about 10:11 p.m., Mr. Johnson was standing within a crowd of demonstrators in front

7 of City Hall.  Johnson Decl. ¶ 13.  At two later points in time, at approximately 10:24 p.m. and

8 10:33 p.m., City Hall crowd members threw a volley of objects at the officers.  *See id.* ¶¶ 14, 16;

9 Byers Decl. ¶ 3.  Mr. Johnson did not throw any objects.  Johnson Decl. ¶ 4.  Further, Mr. Johnson

10 declares that he did not observe anyone within a 75-yard radius of him throw or attempt to throw

11 any object at police officers.  *Id.*  Officers fired PIW weapons in response to each of the two

12 volleys.  *See id.* ¶¶ 14, 16; Byers Decl. ¶ 3.  Each time the police officers fired their PIW weapons,

13 Mr. Johnson and the crowd retreated.  *See* Johnson Decl. ¶¶ 14, 16.  At some point during the

14 protest, Mr. Johnson was struck in the back of the leg by an object.  *See id.* ¶ 17; *id.* at Exh. 1.

15 The parties dispute the following facts.  Mr. Johnson asserts that the object that hit his leg

16 was a PIW, and that it hit him just after about 10:33 p.m., when he and the rest of the crowd were

17 retreating from the PIWs fired by the police after protestors threw a second volley of objects at the

18 police.  *Id.* ¶ 17.  Defendants contend that Mr. Johnson was struck shortly after protestors threw

19 the first volley of objects at the police at about 10:24 p.m.  *See* Johnson Dep. 105:1–19, 146:22–

20 150:7, 155:24–156:24, 157:20–22, 158:4–159:1.

21 Mr. Johnson did not see a police officer shoot a projectile at him, and did not see what

22 object in fact struck him.  *See* Johnson Dep. 119:17–19, 122:14–17.  Jason Fries, an expert in

23 forensic animation and trajectory analysis, opines—based on videos indicating the relative

24 positions of the officers at the scene and Mr. Johnson, as well as the direction and timing of each

25 shot fired by the officers and the timing of when Mr. Johnson's mobility was affected—that

26 Officer Adgar fired the projectile that struck Mr. Johnson.  *See* Decl. of Jason Fries in Opp'n to

27 Mot. ("Fries Decl.") ¶¶ 6–13 & Attach. B ("Fries Report").

28

4

### 5.    Officer Adgar's Experience at the Protest on May 30, 2020

On May 30, 2020, Officer Adgar was equipped with a 40mm PIW launcher while he worked at the City Hall protest.  Adgar Decl. ¶ 5.  (Before graduating from the SJPD Academy in December 2017, Officer Adgar attended a training to qualify to carry a 40mm PIW launcher.  *Id.* ¶ 2.)  Defendants assert that Officer Adgar only fired at three individuals on May 30, and that each individual had thrown a glass bottle at police.  *Id.* ¶¶ 5–8.  Pursuant to Officer Adgar's report, which Mr. Johnson disputes, Officer Adgar fired a total of five 40mm PIWs at three individuals during the protest, all at about 10:30 p.m.  *See* Adgar Decl., Exh. 2 ("Adgar Police Report"), at 1.  First, after seeing a person throwing a plastic water bottle at police and then seeing a green glass beer bottle thrown from behind a wall, Officer Adgar fired a single 40mm PIW at, and hit in the leg, an individual holding a beer bottle.  *See id.*  Then, after protestors threw multiple water bottles, glass bottles, and rocks at officers in the area, Officer Adgar observed a man wearing all black clothing throw a glass bottle, and fired two 40mm PIWs at the man.  *See id.*  He did not see if either PIW hit the man.  *See id.*  Lastly, after seeing protestors throw more rocks, water bottles, and glass bottles at officers, Officer Adgar fired two 40mm PIWs at a woman who another SJPD officer said had thrown a glass bottle.  *See id.* at 2.  Officer Adgar's body-worn camera footage indicates that he fired the first PIW at about 10:24 p.m., and the following PIWs at about 10:33 and 10:34 p.m.  *See* Adgar Decl., Exh. 3 ("Video Exh. (J. Adgar)").

### B.    Procedural History

Mr. Johnson filed this suit in March 2021, asserting claims against the City and Doe defendants.  *See* ECF No. 1.  In September 2021, with the Court's leave and pursuant to the parties' stipulation, Mr. Johnson then filed a First Amended Complaint against the City, Officer Adgar, and Doe defendants.  *See* ECF No. 47.  Defendants filed a motion to dismiss the First Amended Complaint, which the Court granted in part and denied in part.  *See* ECF No. 67.  Mr. Johnson filed a Second Amended Complaint on July 14, 2022.  *See* Second Am. Compl. ("SAC"), ECF No. 73.  The SAC asserts two claims under 42 U.S.C. § 1983 against Officer Adgar and the City—one for violation of the Fourth Amendment for a seizure accomplished through excessive force and the second for violation of the First Amendment for retaliatory use of force.  *See id.*

¶¶ 68–82.  Mr. Johnson also asserts claims against Officer Adgar and the City for violation of the Bane Act, Cal. Civ. Code §§ 52.1, 52; battery; and negligence.  *Id.* ¶¶ 83–98.  Mr. Johnson seeks general and special damages; civil penalties and statutory damages under the Bane Act; punitive damages; pre- and post-judgment interest; attorneys' fees; and costs of suit.  *See id.* at Prayer for Relief.  Defendants filed a motion to dismiss the SAC in part, which the Court denied on December 12, 2022.  *See* ECF No. 85.  Defendants answered the SAC on December 20, 2022.  *See* ECF Nos. 86, 87.

Defendants filed the pending Motion for Summary Judgment on July 17, 2023.  *See* Mot. Mr. Johnson opposed the Motion, *see* Opp'n; Defendants filed a reply in support of the Motion, *see* Reply; and Mr. Johnson filed a response to the evidentiary objections in Defendants' reply, *see* Pl.'s Resp. to Evid. Objs.  The Court heard oral argument on September 21, 2023.

## II.    EVIDENTIARY OBJECTIONS

Defendants object to the following evidence submitted by Mr. Johnson in support of his opposition to the Motion: (1) the declarations of Breanna Contreras, Pietro Di Donato, Derrick Sanderlin, and Adira Sharkey, ECF Nos. 116-1–116-4, on the ground that Mr. Johnson did not disclose these witnesses; (2) Exhibits 8, 9, 21, 30, and 36 to the Declaration of Abimael Bastida ("Bastida Declaration" or "Bastida Decl."), ECF No. 117, on the ground that they constitute testimony from undisclosed witnesses; (3) Exhibits 4 and 12–20 to the Bastida Declaration, on the grounds that (a) Mr. Johnson disclosed no authenticating person for these exhibits of news footage, commentary, and social media posts, (b) the evidence is inadmissible hearsay, (c) the evidence is incomplete and misleading, and (d) the evidence constitutes inadmissible opinion testimony; and (4) Attachment C to the Fries Report, on the ground that Mr. Fries never disclosed the video.  *See* Reply 1.

Mr. Johnson counters that (1) Breanna Contreras, Pietro Di Donato, Derrick Sanderlin, and Adira Sharkey were known to the City because they are each a plaintiff in a separate lawsuit against the City arising out of the same protests and similar unlawful conduct; (2) he identified these four witnesses in a supplemental disclosure prior to filing his opposition; (3) Exhibits 8 and 36 to the Bastida Declaration are deposition excerpts from another action of two City employees

United States District Court
Northern District of California

who were deposed in multiple lawsuits arising from the same protests, and that one of the two employees was identified in Mr. Johnson's initial disclosures and deposed in this action; (4) Exhibits 9, 18, 21, and 30 to the Bastida Declaration are official records of the City that were disclosed in Mr. Johnson's initial disclosures and subsequently produced by the City during discovery in this action; (5) Exhibits 4 and 12–15 of the Bastida Declaration are video clips of live news coverage of the protests in downtown San Jose, while Exhibits 16–19 are clips of cell phone video footage captured by individuals present at the protests in downtown San Jose; (6) Exhibits 4 and 12–19 contain either no statements and are not hearsay, or contain statements that all fall into exceptions to the rule against hearsay, including excited utterances and public records, or are offered not for the truth of any statement but to show the actions of SJPD officers; (7) Exhibit 20 consists of Google alert emails sent to Chief Edgardo Garcia, and the emails are not subject to the rule against hearsay because they are not offered for their truth but to establish Chief Garcia's receipt of the emails at the dates and times reflected on the emails; and (8) Attachment C to the Fries Report is an enhanced zoomed-in clip of body worn camera footage produced in discovery by Defendants and listed and referenced in the Fries Report that was timely served on Defendants, and that Defendants' counsel marked as an exhibit during the deposition of Mr. Fries.  Pl.'s Resp. to Evid. Objs. 2–3.

Based on the foregoing arguments, the Court rules on Defendants' evidentiary objections as follows:

- Declarations of Breanna Contreras, Pietro Di Donato, Derrick Sanderlin, and Adira Sharkey:  OVERRULED.  Although Mr. Johnson did not disclose these four individuals until after he filed his opposition brief, the Court finds any error harmless because the City was aware of their identifies and the substance of their declarations, with the same counsel for the City having deposed each of them in connection with a lawsuit regarding the same protests and substantially the same unlawful conduct alleged in this action.  *See* Fed. R. Civ. P. 37(c)(1); Decl. of Abimael Bastida in Supp. of Pl.'s Resp. to Evid. Objs. ("Bastida Evid. Obj. Decl.") ¶¶ 3–7, ECF No. 126-1.

- Bastida Decl., Exhs. 8, 36:  OVERRULED.  Exhibits 8 and 36 are excerpts from the depositions of Lt. Juan Cabellos and Captain Jason Dwyer, respectively, taken in the matter of *NAACP of San Jose/Silicon Valley v. City of San Jose*, No. 21-cv-01705 (N.D. Cal.).  Captain Dwyer was identified in Plaintiff's initial disclosures and deposed in discovery in this action.  Lt. Cabellos was not identified in Mr. Johnson's initial disclosures, but is an employee of the City and has been deposed in lawsuits arising out of the same incident.  Under these circumstances, the Court finds harmless any error in Mr. Johnson's failure to disclose the deposition excerpts.  *See* Fed. R. Civ. P. 37(c)(1).

- Bastida Decl., Exhs. 9, 21, 30:  OVERRULED.  These documents were produced by the City during discovery in this action, *see* Bastida Evid. Obj. Decl. ¶ 8, and are covered by Mr. Johnson's initial disclosures identifying official records of or collected by the City regarding the protests following the murder of George Floyd, *see* Rebut. Decl. of Matthew Pritchard ("Pritchard Rebut. Decl."), Exh. A, at 6–7, ECF No. 120-1.

- Bastida Decl., Exhs. 4, 12–19:  GRANTED as to these exhibits, which are video clips of news coverage, livestreams, and cell phone video footage of the protests in downtown San Jose, on the ground that Mr. Johnson did not provide evidence by which the Court could authenticate the exhibits.  *See* Fed. R. Evid. 901; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("[U]nauthenticated documents cannot be considered in a motion for summary judgment.").  The Court notes that it does not rely on these exhibits in the following analysis, and that this ruling does not preclude Mr. Johnson from seeking to introduce these exhibits at trial with proper authentication.

- Bastida Decl., Exh. 20:  OVERRULED.  This exhibit is a set of Google alert emails sent to Chief Garcia's email with links to articles.  In light of the attribution to Chief Garcia, the Court is satisfied that this exhibit could be authenticated.  The Court overrules the hearsay objection because the emails are not offered for the

8

truth of their contents, but rather for their existence.  The Court finds no basis for the objections that the evidence is incomplete and misleading, or constitutes opinion testimony.

- Attachment C to the Fries Report:  OVERRULED.  The attachment is a subset of a video listed and referenced in the Fries Report; Mr. Fries testified during deposition about the video from which the attachment was taken, and Defendants marked the video as an exhibit during the deposition.  *See* Bastida Evid. Obj. Decl. ¶ 10.

## III.   LEGAL STANDARD

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The current version of Rule 56 authorizes a court to grant "partial summary judgment" to dispose of less than the entire case and even just portions of a claim or defense.  *See* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendment; *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015).  As such, a court can, "when warranted, selectively fillet a claim or defense without dismissing it entirely."  *Id.*

The moving party bears the initial burden of "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party makes such a showing, the burden then shifts to the nonmoving party to produce evidence supporting its claims or defenses.  *Id.* at 1103.  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment must be denied if "a fair-minded jury could return a verdict

1    for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

2    **IV.    DISCUSSION**

3         Mr. Johnson brings claims against both Officer Adgar and the City for (1) violation of 42

4    U.S.C. § 1983 based on the Fourth Amendment right to be free of excessive force; (2) violation of

5    42 U.S.C. § 1983 based on the First Amendment right to be free of the retaliatory use of force; (3)

6    violation of the Bane Act, California Civil Code §§ 52.1, 52, based on interference or attempted

7    interference with Mr. Johnson's rights under the First and Fourth Amendments, as well as Article

8    I, Sections 2, 3, and 13 of the California Constitution; (4) battery; and (5) negligence.  SAC ¶¶ 68–

9    98.    Defendants seek summary judgment on all five claims.  *See* Mot. 1.  They argue that the

10   undisputed facts preclude Mr. Johnson's Fourth Amendment and First Amendment claims against

11   Officer Adgar and prevent him from establishing *Monell* liability against the City on the same

12   claims, and that Mr. Johnson's three state law claims fall with the § 1983 claims.  *See generally*

13   Mot. 9–25.  The Court addresses these arguments in turn.

14        **A.    Claims Under 42 U.S.C. § 1983 Against Officer Adgar**

15             **1.    Legal Framework**

16        "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of

17   was committed by a person acting under color of state law; and (2) the conduct deprived the

18   plaintiff of a federal constitutional or statutory right."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971

19   (9th Cir. 2011).  In addition, "[t]he doctrine of qualified immunity protects government officials

20   from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated

21   a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

22   challenged conduct.'"  *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563

23   U.S. 731, 735 (2011)).

24        Mr. Johnson brings § 1983 claims against Officer Adgar based on violations of the Fourth

25   Amendment and First Amendment.  The Court addresses these in turn.

26             **2.    Fourth Amendment Claim – Excessive Force**

27        "An objectively unreasonable use of force is constitutionally excessive and violates the

28   Fourth Amendment's prohibition against unreasonable seizures."  *Torres v. City of Madera*, 648

United States District Court
Northern District of California

1   F.3d 1119, 1123 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 394–96 (1989); *Tekle v.*

2   *United States*, 511 F.3d 839, 844 (9th Cir. 2007)).  A Fourth Amendment seizure occurs "only

3   when there is a governmental termination of freedom of movement through means intentionally

4   applied."  *Brower v. County of Inyo*, 459 U.S. 593, 597 (1989) (emphasis omitted).  "Thus, an

5   'unintended person … [may be] the object of the detention,' so long as the detention is 'willful'

6   and not merely the consequence of 'an unknowing act.'"  *Brendlin v. California*, 551 U.S. 249,

7   254 (2007) (quoting *Brower*, 459 U.S. at 596) (alterations in original); *see also Nelson v. City of*

8   *Davis*, 685 F.3d 867 (9th Cir. 2012) ("To constitute a seizure, the governmental conduct must be

9   purposeful, and cannot be an unintentional act which merely has the effect of restraining the

10  liberty of the plaintiff.").  However, "an innocent bystander struck by a stray bullet from [an]

11  officer's weapon would not have such a claim."  *United States v. Lockett*, 919 F.2d 585, 590 n.4

12  (9th Cir. 1990) (citing *Brower*, 459 U.S. at 597).

13          If a seizure has occurred, courts analyze the reasonableness of force under a totality of the

14  circumstances inquiry, including "the severity of the crime at issue, [] whether the suspect posed

15  an immediate threat to the safety of the officers or others, and [] whether the suspect was actively

16  resisting arrest or attempting to evade arrest by flight," *Torres*, 648 F.3d at 1119, as well as

17  the "type and amount of force inflicted" and "the severity of [the plaintiff's] injuries," *Felarca v.*

18  *Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018).

19          Defendants argue that Mr. Johnson's § 1983 claim against Officer Adgar for alleged

20  excessive force fails because (1) Mr. Johnson cannot prove that Officer Adgar fired a projectile

21  that struck him and thereby caused his injury; (2) Mr. Johnson was not seized under the Fourth

22  Amendment because he was not the deliberate object of Officer Adgar's force; (3) Mr. Johnson's

23  allegations and theory mean that Officer Adgar did not have the requisite intent to seize Mr.

24  Johnson; and (4) Officer Adgar is entitled to qualified immunity on the claim.  The Court

25  addresses each argument in turn.

26                      a.      **Whether Officer Adgar Caused Mr. Johnson's Injury**

27          Causation is "an implicit requirement" of a civil rights action, including an action brought

28  under 42 U.S.C. § 1983.  *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    A plaintiff must establish that a defendant caused his injury—*i.e.*, deprived him of a constitutional

2    right—both proximately and in fact.  *See id.*  Defendants argue that Mr. Johnson cannot establish

3    that Officer Adgar caused his injury because no evidence disputes Officer Adgar's declaration that

4    he fired only at people other than Mr. Johnson.  *See* Mot. 11–12.  Mr. Johnson counters that both

5    video evidence and the analysis of that video evidence by Plaintiff's video forensics expert, Mr.

6    Fries, show that Officer Adgar fired PIW that hit Mr. Johnson's leg.  *See* Opp'n 14–17.

7         The evidence before the Court is as follows.  It is undisputed that Mr. Johnson did not

8    throw a glass bottle or any other object at police officers.  *See* Mot. 11; *see also* Johnson Decl. ¶ 4.

9    It is additionally undisputed that Mr. Johnson did not see a police officer shoot a projectile at him,

10   and did not see what object in fact struck him.  *See* Johnson Dep. 119:17–19, 122:14–17.  Officer

11   Adgar states that he only fired his 40mm PIW launcher at three individuals who had thrown glass

12   bottles at police officers.  *See* Adgar Decl. ¶¶ 5–8.  According to Officer Adgar's police report and

13   body-worn camera footage, Officer Adgar fired one 40mm PIW at about 10:24 p.m., and four

14   40mm PIWs at approximately 10:33 and 10:34 p.m., for a total of five 40mm PIWs.  *See* Adgar

15   Police Report 1–2.  Mr. Johnson's expert on forensic animation, audio/video analysis, line of sight

16   analysis, and trajectory analysis has submitted a report concluding that the video evidence from

17   security cameras and multiple body-worn cameras shows that "Mr. Johnson was struck and

18   injured by a projectile fired by Officer Adgar."  Fries Decl. ¶ 13; *see id.* ¶¶ 5–8; *see also* Fries

19   Report 15.

20        Defendants argue that Mr. Fries's opinion must be discounted because it relies on two

21   assumptions not supported by the evidence.  *See* Mot. 12 (citing *Stephens v. Union Pac. R.R. Co.*,

22   935 F.3d 852, 856–57 (9th Cir. 2019)).  First, Defendants contend that Mr. Fries's assumption that

23   Mr. Johnson was struck at 10:33 p.m. is unsupported by the evidence because Mr. Johnson

24   testified at his deposition that he was struck at 10:24 p.m.  *See id.*; *see* Johnson Dep. 105:1–19,

25   146:22–150:7, 155:24–156:24, 157:20–22, 158:4–159:1.  However, Mr. Fries explains that the

26   video evidence he reviewed "shows that Mr. Johnson's mobility was only affected after Officer

27   Adgar fired . . . at 10:33:17 [p.m.]."  Fries Report 15.  Mr. Johnson has also submitted a

28   declaration stating that further review of the video evidence in this action has refreshed his

memory since his deposition, and that he was in fact struck at about 10:33 p.m.  *See* Johnson Decl. ¶¶ 5, 23.  Second, Defendants argue that Mr. Fries's assumption that Mr. Johnson was at a specific location corresponding to where Officer Adgar aimed his 40mm PIW launcher at 10:33 p.m. is impermissible because the last video footage of Mr. Johnson shows him at a location "some distance away from the spot where [Mr. Fries] puts him at the time of Officer Adgar's shot."  Mot. 12.  Yet Mr. Fries explains that he was able to observe Mr. Johnson's "compromised mobility immediately following the moment Officer Adgar fired . . . at approximately 10:33 p.m.," Fries Decl. ¶ 8, and Mr. Johnson has submitted a declaration indicating Johnson's exact position in still photos of body-worn camera footage, *see* Johnson Decl. ¶¶ 17–18.  The Court accordingly finds that there is some factual support for Mr. Fries's opinions regarding the time at which Mr. Johnson was struck, and Mr. Johnson's precise location at that time.  *See Stephens*, 935 F.3d at 856 ("The expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation.").

Although a jury is free to assess the credibility of this competing evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and on this basis the Court will consider Mr. Fries's expert opinion that Officer Adgar fired a PIW that struck Mr. Johnson at 10:33 p.m.  In doing so, the Court finds that there exists a genuine dispute of material fact regarding whether Officer Adgar caused Mr. Johnson's injury, and accordingly will deny Defendants' Motion on this ground.

### b. Whether Mr. Johnson was Seized Under the Fourth Amendment

Defendants next raise two arguments in support of the position that Mr. Johnson cannot show a seizure under the Fourth Amendment, even if Officer Adgar did fire the PIW that struck Mr. Johnson.  *See* Mot. 13–16.

### i. Whether Officer Adgar Intentionally Seized Mr. Johnson

First, Defendants argue that the undisputed evidence shows that even if Officer Adgar fired a projectile that struck Mr. Johnson, such conduct "was plainly an accident," so that Mr. Johnson was not seized within the meaning of the Fourth Amendment.  *See* Mot. 13–15.  That is,

1    Defendants contend that each PIW fired by Officer Adgar on May 30, 2020 was intended to

2    restrain one of three specific individuals who had thrown a glass bottle at police officers—thereby

3    excluding Mr. Johnson, who did not throw any object at the officers—so that Mr. Johnson was in

4    effect a bystander inadvertently harmed during the attempted seizure of a third party.  *See id.*; *see*

5    *also, e.g.*, *Lockett*, 919 F.2d at 590 n.4 (stating that although "an unarmed suspect shot by a police

6    officer might have a [F]ourth [A]mendment claim against the officer . . . an innocent bystander

7    struck by a stray bullet from the officer's weapon would not have such a claim"); *Rodriguez v.*

8    *City of Fresno*, 819 F. Supp. 2d 937, 946 (E.D. Cal. 2011) ("A plaintiff that is injured collaterally

9    or incidentally to the application of force by police against a third party cannot maintain a Fourth

10   Amendment claim.").

11        Mr. Johnson counters that Officer Adgar seized him within the meaning of the Fourth

12   Amendment, regardless of whether he was the deliberate object of Officer Adgar's force, because

13   Officer Adgar volitionally fired 40mm PIWs at undifferentiated individuals in the crowd and

14   struck Mr. Johnson.  *See* Opp'n 18 (citing *Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir.

15   2012) ("Regardless of whether [the plaintiff] was the specific object of governmental force, he and

16   his fellow students were the undifferentiated objects of shots intentionally fired by the officers in

17   the direction of that group.").  Defendants respond that *Nelson* is inapposite because the court

18   there held that the plaintiff was intentionally seized under the Fourth Amendment where officers

19   intentionally fired at the plaintiff as one member of the group against which they intended to use

20   undifferentiated force, which is a separate issue from the question of "whether the *accidental*

21   striking of a person while targeting a *different suspect* can constitute a seizure."  Reply 4.

22        At the hearing on this Motion, the Court noted Mr. Johnson could only rely on *Nelson* if

23   the SAC included allegations supporting Mr. Johnson's theory that Officer Adgar had fired

24   generally into the crowd, rather than aiming at specific third parties.[1]  *See* Tr. 60:13–25.  As

25   further discussed at oral argument, the SAC alleges that "Officer Adgar aimed and intentionally

26

27   _____

     [1] Counsel for Mr. Johnson confirmed that it is not Mr. Johnson's position that Officer Adgar
28   intentionally targeted Mr. Johnson, but rather that the officer intentionally shot into the crowd in
     the direction of Mr. Johnson.  Tr. 60:13–23.

1    fired at least one 40mm foam baton projectile towards Mr. Johnson as Mr. Johnson was attempting

2    to flee." *Id.* at 62:12–19 (quoting SAC ¶ 29). The Court finds that this allegation provides a

3    sufficient basis for Mr. Johnson to argue a seizure under *Nelson*, so that the question before the

4    Court is whether the undisputed evidence shows that Officer Adgar was aiming at specific

5    individuals, as opposed to firing into the crowd without having identified an individual suspect.

6         Defendants argued at the hearing on this Motion that the only—and therefore undisputed—

7    evidence of Officer Adgar's intent is Officer Adgar's police report, which indicates that Officer

8    Adgar fired each of his 40mm PIWs at one of three specific individuals he believed had thrown

9    glass bottles at police officers. *See* Tr. 13:23–14:2; Adgar Police Report 1–2; *see also* Mot. 13.

10   However, as noted in the Opposition, "the appropriate inquiry is whether the challenged conduct

11   *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police

12   officers in the Fourth Amendment context." *See* Opp'n 18 (quoting *Torres v. Madrid*, 592 U.S. ---

13   -, 141 S. Ct. 989, 998 (2021)). Accordingly, the evidence of Officer Adgar's intent therefore also

14   includes the video evidence on record, as well as expert analyses of that video evidence.

15        The evidence before the Court on the question of whether Mr. Johnson was intentionally

16   seized under the *Nelson* framework—*i.e.*, as a member of a crowd at which Officer Adgar fired

17   without aiming at a specific target other than Mr. Johnson—is as follows. Officer Adgar's police

18   report indicates that he intended to fire the 40mm PIWs only at specific individuals other than Mr.

19   Johnson who had thrown glass bottles at the police. *See* Adgar Police Report 1–2. However, the

20   credibility of Officer Adgar's statements regarding his intent is a question for the jury. *See*

21   *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the

22   drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Further,

23   Officer Adgar's police report states that his response to the second volley of objects thrown at the

24   police was to "fire[] two 40mm [PIWs] towards [a] suspect" who had thrown a glass bottle "from

25   inside of the crowd," and that he was "unable to see if [his] 40mm [PIWs] were effective on the

26   suspect" "[d]ue to the size of the crowd." Adgar Police Report 1. There is also video evidence to

27   consider, including footage from Officer Adgar's body-worn camera encompassing the 12 minutes

28   from 10:23 p.m. to 10:35 p.m. on May 30, 2020, from which it is difficult to discern which

United States District Court
Northern District of California

15

individuals threw glass bottles and whether Officer Adgar was aiming at specific targets.  *See* Video Exh. (J. Adgar).  Lastly, Mr. Johnson's police practices expert, retired lieutenant Roger A. Clark, has submitted a report in which he opines that Officer Adgar exhibited an "unprofessional hostility towards the demonstrators and the protests."  *See* Declaration of Roger A. Clark in Opp'n to Mot. ("Clark Decl."), Exh. A ("Clark Report"), at 8, ECF No. 116-5.  Viewing this evidence in the light most favorable to Mr. Johnson, as the nonmoving party, the Court finds that a rational jury could conclude that Officer Adgar struck Mr. Johnson with a 40mm PIW after firing into the crowd without a specific target, and thereby seized Mr. Johnson within the meaning of the Fourth Amendment.  The Court will therefore deny Defendants' Motion on this ground.

### ii. Whether Mr. Johnson's Theory of Harm Establishes Officer Adgar's Lack of Intent to Seize

Defendants next argue that Mr. Johnson's own allegations and theory establish that Officer Adgar did not display the requisite objective intent to restrain because Officer Adgar's actions "objectively evinced the opposite: an intent to repel assaultive suspects and deter them from remaining in the area."  Mot. 15; *see id.* 15–16.  In support of this position, Defendants cite an unpublished Ninth Circuit case, *Jackson-Moeser v. Armstrong*, 765 F. App'x 299 (9th Cir. 2019), as well as decisions from the Eighth Circuit and the District of Columbia.  *See id.* at 15–16.  Mr. Johnson counters that the Ninth Circuit held in *Nelson* that firing projectiles at members of a crowd with the intent to encourage them to disperse constitutes a seizure under the Fourth Amendment.  *See* Opp'n 18 (citing *Nelson*, 685 F.3d at 877–78).  Defendants distinguish *Nelson* by noting that Officer Adgar—unlike the officers in *Nelson*—"did not confine Plaintiff in an enclosed space," but rather "confronted Plaintiff in an open plaza . . . [and] did not do anything to confine him," so that Officer Adgar's objective intent was not to restrain Mr. Johnson.  Reply 6–7.

The Court first notes that, as explained above, it finds that Mr. Johnson's allegations are sufficient to support a theory of seizure under *Nelson*.  *See supra*, at Part IV(A)(2)(b)(i).  Under *Nelson*, to establish a seizure, Mr. Johnson must prove that he was subject to an intentional application of force evincing an objective intent to restrain, regardless of whether Officer Adgar subjectively intended to repel him and whether he was in fact subdued or restrained.  *See Nelson*,

685 F.3d at 877; *see also California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("[T]he mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, was sufficient" to constitute "the quintessential seizure of the person," *i.e.*, an arrest.) (internal punctuation omitted). Here, the evidence before the Court includes Officer Adgar's police report, in which he states that he sought to take individuals into custody, *see* Adgar Police Report at 1–2, and Officer Adgar's body-worn camera footage, in which he fires at a woman while or directly after another officer orders her to stop, *see* Video Exh. (J. Adgar). Drawing all inferences in favor of Mr. Johnson on this motion for summary judgment, the Court finds that this evidence is sufficient to create a disputed issue of fact as to whether a reasonable person would find that Officer Adgar objectively intended to restrain Mr. Johnson by firing at him.

Defendants repeatedly assert that Mr. Johnson's Fourth Amendment claim "depends on the theory that Officer Adgar used force while unable to 'make an arrest,'" so that he cannot prove that Officer Adgar exhibited an objective intent to restrain. Reply 6 (citing Opp'n 22); *see also* Mot. 10, 15 (citing Pl.'s Opp'n to Mot. to Dismiss SAC in Part ("MTD Opp'n") 10, ECF No. 79). The Court rejects this argument for three reasons. First, each of the statements to which Defendants cite is made in support of Mr. Johnson's arguments in support of his First Amendment claim, rather than his Fourth Amendment claim. *See* Opp'n 22; MTD Opp'n 10; *see also* SAC ¶ 33(d) (alleging Officer Adgar was not "in a position to arrest any of the people on whom he used the weapon" and used force due to disagreement with protest, following allegations on Mr. Johnson's exercise of First Amendment rights). Second, a theory that Officer Adgar was unable to make an arrest is logically distinct from a theory that Officer Adgar did not objectively evince an intent to arrest. That is, although the latter theory would contradict the required showing for a seizure, the former is not relevant to the analysis. Finally, a plaintiff may advance alternate theories, including on summary judgment, as long as both are supported by the pleadings. *See, e.g.*, *Desrosiers v. Hudson Specialty Ins. Co.*, 438 F. App'x 629, 631 (9th Cir. 2011) (reversing grant of summary judgment where one of alternative theories pled in complaint supported plaintiff's argument). The SAC alleges that Officer Adgar was equipped with a 40mm PIW launcher and zip ties, that Officer Adgar aimed and intentionally fired at least one 40mm foam

1    baton projectile towards Mr. Johnson, and that Mr. Johnson felt the PIW hit the back of his leg.

2    SAC ¶¶ 28–29.  These allegations are sufficient to support a theory that Officer Adgar's conduct

3    evinced an objective intent to restrain when he fired each 40mm PIW, and the evidence before the

4    Court would permit a rational jury to find as much.

5          For the above reasons, the Court will deny summary judgment on this ground.

6                            **c.      Qualified Immunity**

7          Lastly, Defendants argue that the doctrine of qualified immunity protects Officer Adgar

8    from liability under Mr. Johnson's Fourth Amendment claim.  *See* Mot. 16–17.  In evaluating this

9    argument, the Court must "consider whether the law was clearly established at the time of the

10   challenged conduct."  *Felarca*, 891 F.3d at 816 (citing *Sjurset v. Button*, 810 F.3d 609, 615 (9th

11   Cir. 2015)).  The "clearly established right [at issue] must be defined with specificity."  *City of

12   Escondido v. Emmons*, 586 U.S. ----, 139 S. Ct. 500, 503 (2019).  Defendants contend that there is

13   no evidence that Officer Adgar intentionally fired upon and struck Mr. Johnson with a projectile,

14   so that Mr. Johnson could at most show that Officer Adgar inadvertently or mistakenly struck Mr.

15   Johnson while firing a 40mm PIW at a suspect who had committed felony assault on police officer

16   (by throwing a glass bottle toward officers).  *See* Mot. 17.  Defendants thus argue that since an

17   officer's inadvertent striking of a third party or bystander while aiming at a different individual is

18   not a seizure under the Fourth Amendment, Mr. Johnson cannot show that Officer Adgar violated

19   a clearly established right based on an excessive force theory.  *See id.*; Reply 9.  Mr. Johnson

20   counters that this argument requires accepting Defendants' position that Officer Adgar

21   inadvertently struck Mr. Johnson while firing at a specific individual other than Mr. Johnson who

22   had committed a crime, and that the evidence, viewed in the light most favorable to Mr. Johnson,

23   does not support such an acceptance.  *See* Opp'n 19–20.

24         The Court agrees with Mr. Johnson that granting qualified immunity to Officer Adgar

25   turns on accepting Defendants' version of disputed facts.  As the Court has explained, there

26   remain disputed facts as to whether Officer Adgar did or did not intend to strike a specific

27   individual other than Mr. Johnson—if that intent was not present, so that Mr. Johnson was not a

28   mere bystander, the basis for Defendants' qualified immunity argument crumbles.  *See supra*, at

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1    Part IV(A)(2)(b); *see also NAACP of San Jose/Silicon Valley v. City of San Jose*, No. 21-cv-

2    01705, 2023 WL 4983161, at *7 ("[I]t was clearly established by the Ninth Circuit in *Nelson* that

3    an officer could not constitutionally shoot a projectile that risked causing serious harm in the

4    direction of non-threatening individuals who had committed, at most, minor misdemeanors[.]");

5    *see also Sanderlin v. City of San Jose*, No. 20-cv-04824, 2023 WL 2562400, at *11 (N.D. Cal.

6    Mar. 16, 2023) (rejecting qualified immunity argument where officers shot projectiles at

7    participants in protest who "were not engaged in any violence towards the police, although others

8    around them may have been").  Accordingly, qualified immunity is not appropriate at present.  *See*

9    *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 630 (9th Cir. 2022) (holding that "[c]ritical

10   disputes of fact render[ed] summary judgment premature," including on qualified immunity

11   rounds); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010)

12   (affirming denial of summary judgment on qualified immunity grounds where genuine issues of

13   fact existed regarding whether the officers violated plaintiff's Fourth Amendment rights, which

14   were also material to a proper determination of the reasonableness of the officers' belief in the

15   legality of their actions).

16                      **3.      First Amendment Claim – Retaliatory Use of Force**

17          Defendants also move for summary judgment on Mr. Johnson's § 1983 claim against

18   Officer Adgar for allegedly engaging in retaliatory force against Mr. Johnson due to Mr.

19   Johnson's participation in the May 30 protest, in violation of the First Amendment.  *See* Mot. 17–

20   19.  As noted above, the general requirement to establish a § 1983 claim is that (1) the conduct

21   complained of was committed by a person acting under color of state law; and (2) the conduct

22   deprived the plaintiff of a federal constitutional or statutory right.  *See supra*, at Part IV(A)(1)

23   (citing *Patel*, 648 F.3d at 971).  To state a § 1983 claim for retaliatory violation of the First

24   Amendment, Mr. Johnson must plead and prove that (1) he was "engaged in a constitutionally

25   protected activity"; (2) Officer Adgar's actions would "chill a person of ordinary firmness from

26   continuing to engage in the protected activity;" and (3) "the protected activity was a substantial or

27   motivating factor" in Officer Adgar's conduct.  *Index Newspapers LLC v. U.S. Marshals Serv.*,

28   977 F.3d 817, 827 (9th Cir. 2020).  The final element can be demonstrated through direct or

1  circumstantial evidence, and "involves questions of fact that normally should be left for trial."  *Id.*

2  Defendants first cursorily argue that Mr. Johnson's retaliation claim fails because he

3  cannot prove that Officer Adgar was the source of the projectile that struck Mr. Johnson, and that

4  the undisputed facts show that Mr. Johnson was not the deliberate object of that force.  *See* Mot.

5  18 (citing to sections in Motion arguing Fourth Amendment issues of causation and intentional

6  seizure).  Defendants have provided no legal support for these arguments in the First Amendment

7  context, *see id.*, and in any case the Court has found disputed issues of fact on both theories, as

8  described above.  *See supra*, at Parts IV(A)(2)(a)–(b).  Accordingly, the Court will deny summary

9  judgment on this ground.

10  With respect to the three elements required to plead a First Amendment retaliation claim,

11  Defendants argue that Mr. Johnson cannot show the third element of motivating animus because

12  (1) the record evinces no evidence that Officer Adgar interacted with Mr. Johnson prior to

13  potentially striking him with a projectile, and (2) the evidence shows that Officer Adgar's force

14  occurred directly after protestors threw a volley of objects at police, so that a conclusion that

15  Officer Adgar in fact targeted Mr. Johnson with punitive force would be based on pure

16  speculation.  *See* Mot. 18–19.  Mr. Johnson argues that the evidence creates a genuine dispute of

17  fact as to Officer Adgar's motivation in firing towards him, pointing to Mr. Clark's expert opinion

18  that Officer Adgar "demonstrated an unprofessional hostility toward the demonstrators."  Opp'n

19  21 (quoting Clark Report 8).

20  The Court notes that Mr. Johnson will likely find it difficult to produce direct evidence that

21  Officer Adgar's subjective motives for shooting were related to the protests and their subject

22  matters.  But Mr. Johnson has provided some circumstantial evidence, such as Mr. Clark's

23  analysis of Officer Adgar's interactions with the demonstrators, *see* Clark Report 8, and the parties

24  appear to indicate the existence of deposition testimony from Officer Adgar that the protest was

25  "anti-police" in nature.[2]  "Further, the Ninth Circuit has recognized that a short 'proximity in time

26

27  _____

[2] Mr. Johnson argues that Officer Adgar acknowledged the "anti-police" nature of the protest during his deposition—and Defendants address the argument without questioning its accuracy—but that evidence is not presently before the Court.  *Compare* Opp'n 21 (citing Bastida Decl., Exh.

28  33 ("Adgar Dep."), at 181:12–17), *with* Adgar Dep.; *see also* Reply 7.

United States District Court
Northern District of California

between the protected action and the allegedly retaliatory [conduct]' supports a First Amendment claim." *Sanderlin*, 2023 WL 2562400, at *16 (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 744 (9th Cir. 2001)). Here, Mr. Johnson was struck during the protest, *i.e.*, with no gap in time between his protected action and the alleged retaliatory force.

For these reasons, and in light of the Ninth Circuit's guidance that the motivating animus element of a First Amendment retaliation claim "involves questions of fact that normally should be left for trial," *see Index Newspapers*, 977 F.3d at 827, the Court finds that there is a genuine dispute of material fact as to whether Mr. Johnson's protected activity—protesting police brutality and the killing of George Floyd—was a "substantial or motivating factor" in the officers' conduct. Accordingly, it will deny summary judgment as to Mr. Johnson's § 1983 claim against Officer Adgar for retaliation in violation of the First Amendment.

### B.   Claims Under 42 U.S.C. § 1983 Against the City

Mr. Johnson brings the same § 1983 claims against the City for violations of the First and Fourth Amendments, and Defendants seek summary judgment on both claims. *See* Mot. 19–24.

#### 1.   Legal Framework

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official . . . policy or custom." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, . . . and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality[.]" *Id.* at 1153 (citations omitted). "A municipality may [also] be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving

1  force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

2  Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130

3  F.3d 432, 438 (9th Cir. 1997)).

4      Defendants first argue that there can be no *Monell* liability for the City because Mr.

5  Johnson is unable to establish that Officer Adgar violated his First and Fourth Amendment rights.

6  *See* Mot. 19.  This argument fails because the Court has held there exist disputed issues of fact on

7  both claims.  *See supra*, at Parts IV(A)(2)–(3).

8      Defendants next argue that the *Monell* claims fail because Mr. Johnson cannot show that

9  the City had any official policy or custom—whether through an unwritten custom or practice,

10  failure to train or supervise, or ratification—to allow excessive force or speech-based retaliation

11  by law enforcement.  *See* Mot. 19.  The Court addresses each argument in turn.

### 2.       Custom or Practice

13      A municipality may be held liable on the basis of an unconstitutional policy if a plaintiff

14  can "prove the existence of a widespread practice that, although not authorized by written law or

15  express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage"

16  with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes

17  v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).  "Liability for improper custom may not be

18  predicated on isolated or sporadic incidents"; rather "[t]he custom must be so persistent and

19  widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d

20  911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted).

21      Defendants argue that Mr. Johnson, to prevail on a custom-or-practice theory of *Monell*

22  liability, would have to show the City had a "longstanding and permanent" practice of intentional,

23  causeless targeting of non-violent protestors with 40mm PIWs because they were expressing a

24  political message—and that the undisputed evidence establishes that the City explicitly prohibited

25  such conduct.  *See* Mot. 20–21.  Mr. Johnson counters that the custom or practice at issue is that of

26  the City "responding to non-violent demonstrators protesting police violence with excessive force,

27  including the indiscriminate use of 40mm PIWs." Opp'n 24.  He argues that the evidence

28  establishes that SJPD officers shot multiple non-violent protestors with PIWs, including 40mm

22

1    PIWs, during the protests on both May 29 and May 30, and in doing so established a custom of

2    excessive force on May 29 that continued on May 30, and which constituted the moving force

3    behind Mr. Johnson's injuries.  *See id.* at 24–25; *see also* Tr. 42:21–44:13.  Defendants counter

4    that the alleged custom or practice is not sufficiently widespread, and that the evidence submitted

5    concerning the multiple protestors shot with PIWs is inadmissible and irrelevant to the force

6    allegedly experienced by Mr. Johnson.  *See* Reply 10–13.

7         The evidence here shows that SJPD officers repeatedly shot 37mm and 40mm PIWs into

8    the crowd during the May 29 protests.  *See, e.g.*, Bastida Decl., Exh. 31 (SJPD captain recounting

9    grant of permission to use 37mm and 40mm OC and 40mm foam baton PIWs on May 29).  At one

10   point during the May 29 protest, an SJPD sergeant shouted, "Get [expletive] foam baton 40s too,"

11   as officers shot into the crowd.  *See id.*, Exh. 29, at 17:14:20–17:15:00.  The evidence further

12   shows that SJPD officers fired PIWs during the May 30 protest, *see* Adgar Rep., and supports a

13   finding that Mr. Johnson was struck by a PIW during the May 30 protest.  *See* Johnson Decl. ¶ 17.

14   Based on this evidence, the Court finds a genuine dispute of material fact as to whether SJPD

15   officers' repeated firing of PIWs into the May 29 and May 30 protest crowds constituted an

16   unwritten custom or practice of engaging in excessive and/or retaliatory force against the

17   demonstrators protesting police brutality.  *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147–48

18   (9th Cir. 2005) (reversing summary judgment after reasoning that evidence, when viewed in light

19   most favorable to plaintiffs, permitted inference of custom or practice of constitutional violations

20   based on series of incidents occurring on same day); *NAACP of San Jose/Silicon Valley*, 2023 WL

21   4983161, at *16–17 (denying summary judgment based on SJPD's use of 37mm and 40mm PIWs

22   at May 29 protest); *cf. Sanderlin*, 2023 WL 2562400, at *21 (granting summary judgment where

23   no plaintiff provided evidence of being struck with projectile whose use plaintiffs alleged was

24   unconstitutional custom or practice).[3]

25        Because the Court concludes Mr. Johnson has raised a triable issue as to whether the City's

26

27   _____

28   [3] The Court also notes that the *Sanderlin* plaintiffs did not argue that SJPD officers' use of PIWs
     on May 29 itself created a custom or practice, as Mr. Johnson does here.  *See Sanderlin v. City of
     San Jose*, N.D. Cal. No. 20-cv-4824, Pls.' Opp'n to Defs.' Mot. Summ. J. 17–25, ECF No. 113.

                                             23

*United States District Court*
*Northern District of California*

policy or custom of using PIWs against non-threatening protestors of police brutality was

unconstitutional under the law established by the Ninth Circuit in *Nelson* and related cases, it will

deny the motion for summary judgment on this ground.

### 3. Failure to Supervise or Failure to Train

"Under *Monell*, a local government body can be held liable under § 1983 for policies of

inaction as well as policies of action." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).

Such policies may include a failure to adequately supervise or train employees. *See, e.g.*, *Davis v.*

*City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (discussing § 1983 liability based on

"policy or custom of inadequately supervising . . . police officers); *Long v. County of Los Angeles*,

442 F.3d 1178, 1186 (9th Cir. 2006) ("A municipality's failure to train an employee who has

caused a constitutional violation can be the basis for § 1983 liability where the failure to train

amounts to deliberate indifference to the rights of persons with whom the employee comes into

contact.") (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Liability for policies of inaction, including failures to supervise and train, requires a

showing that the policy (1) "amounts to deliberate indifference to the plaintiff's constitutional

rights" and (2) "caused the violation in the sense that the municipality could have prevented the

violation with an appropriate policy." *Jackson*, 749 F.3d at 763 (quoting *Tsao v. Desert Palace,*

*Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). Deliberate indifference generally "requires showing

that the defendant 'was on actual or constructive notice that [the] omission would likely result in a

constitutional violation.'" *Id.* (quoting *Tsao*, 698 F.3d at 1145). That is, a "pattern of similar

constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference."

*Connick v. Thompson*, 563 U.S. 51, 62 (2011). Rarely, "the possibility . . . that the

unconstitutional consequences of [a policy of inaction] could be so patently obvious that a city

could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

Mr. Johnson asserts that the City may be held liable for the alleged violations of his First

and Fourth Amendment rights based on two policies of inaction, namely, SJPD's failure to (1)

supervise its officers' use of PIWs and (2) train its officers in the use of PIWs in crowd control

circumstances. *See* SAC ¶¶ 38–63; Opp'n 27–31. Defendants argue that Mr. Johnson cannot

1   make the necessary showing that there existed either a "pattern of similar constitutional violations

2   by untrained employees" or unsupervised police officers, or a likelihood of constitutional

3   violations that was "so patently obvious" that the City consciously chose to allow that likelihood.

4   *See* Mot. 22 (quoting *Connick*, 563 U.S. at 62, 64); *see also id.* at 21–24.

5          With respect to Mr. Johnson's failure to supervise argument, the evidence indicates that the

6   City's express policy was that 40mm PIWs were only to be used on suspects likely to cause

7   serious bodily injury or death, and not for general crowd control, while 37mm PIWs had specified

8   crowd control uses.  *See* Tassio Decl., Exh. 2, at 2.  Additional evidence establishes that SJPD

9   officers fired about 550 rounds of 37mm and 40mm PIWs at the May 29 protest, which resulted in

10  widespread news coverage of which SJPD was aware.  *See* Bastida Decl., Exh. 5, at 59; *id.* at Exh.

11  2 ("Tindall Dep."), at 168:5–171:16; *id.* at Exh. 20.  Prior to the May 30 protest, officers were

12  explicitly instructed that the Duty Manual was in effect, that "shooting indiscriminately into a

13  crowd" was a violation of the Duty Manual, and that, given the crowd presence, they had to be

14  "surgical" in using the 40mm PIWs.  *See* Pritchard Rebut. Decl., Exh. 6 ("Dwyer Rebut. Dep."), at

15  173:16–175:1.  Officers were both expected to ensure they themselves adhered to the Duty

16  Manual, and supervisors were also present to monitor officers' conduct.  *See* Bastida Decl., Exh. 3

17  ("Dwyer Dep."), at 176:5–21.  The Court does not find this evidence to suggest actual or

18  constructive notice of a "pattern" of constitutional violations based on inadequate supervision of

19  40mm PIWs, as "ordinarily necessary" to establish a policy of inaction demonstrating deliberate

20  indifference to constitutional rights, nor one of the "rare" instances in which it was "patently

21  obvious" that the supervision of 40mm PIW use during the May 30 would create § 1983 liability.

22  *See Connick*, at 563 U.S. at 62, 64; *see also Flores v. County of Los Angeles*, 758 F.3d 1154,

23  1158–60 (9th Cir. 2014) (rejecting § 1983 claim based on deliberate indifference where proper

24  course of conduct "is obvious to all without training or supervision").  Nor is the Court persuaded

25  by Mr. Johnson's reliance on *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 943 (D. Minn.

26  2021), and *Tirado v. City of Minneapolis*, 521 F.Supp.3d 833, 843–44 (D. Minn. 2021), *see* Opp'n

27  28; Tr. 49:12–18, both of which are out-of-circuit cases evaluating a motion to dismiss.

28          Similarly, with respect to Mr. Johnson's failure to train argument, the undisputed evidence

United States District Court
Northern District of California

United States District Court
Northern District of California

1    before the Court indicates that SJPD officers, including Officer Adgar, were trained on the use of

2    40mm PIWs.  *See, e.g.*, Tassio Decl. ¶¶ 4, 9; *id.* at Exhs. 1, 2; Adgar Decl. ¶ 2.  Mr. Johnson

3    argues that SJPD did not train its officers on using 40mm PIWs when faced with a large crowd,

4    *see* Opp'n 30; Tr. 46:7–19, but the inquiry is not one based on hindsight.  Rather, the standard

5    requires a showing that there have been a prior recognition of inadequate training based on a

6    pattern of constitutional violations, or circumstances under which a likely constitutional violation

7    was so obvious that failure to do more constitutes a policy of deliberate indifference.  *See Connick*,

8    563 U.S. at 62, 64.  There is no indication of either, for the same reasons described above with

9    respect to the failure to supervise argument.

10          Accordingly, the Court finds that the evidence before it does not create a dispute of

11   material fact that the City demonstrated deliberate indifference in its supervision or training

12   practices that caused Mr. Johnson's injury.  It will grant the summary judgment motion on this

13   ground.

14                      **4.      Ratification**

15          Defendants also seek summary judgment on Mr. Johnson's final theory of *Monell* liability,

16   *i.e.*, that Chief Garcia or other department heads ratified the force used by SJPD officers, including

17   Officer Adgar.  *See* Mot. 24.  A municipality may be held liable under § 1983 if "an official with

18   final policy-making authority ratified a subordinate's unconstitutional decision or action and the

19   basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  "There must . . . be

20   evidence of a conscious, affirmative choice" to ratify the conduct.  *See id.* at 1347.

21          Defendants argue that the undisputed facts preclude a ratification theory because "no City

22   policymaker was aware of Adgar's decision to fire the 40mm foam baton that Plaintiff claims

23   struck him, much less that any such policymaker affirmatively and consciously approved that use

24   of force, much less still approved of that force and the alleged basis for it."  Mot. 24.  Mr. Johnson

25   counters that the unconstitutional use of PIWs was an "organized, department-wide response" that

26   permits the presumption that the police chief was ratifying officers' actions, and that the lack of

27   discipline of Officer Adgar or other officers supports ratification.  *See* Opp'n 31 (quoting *Martinez

28   v. City of Santa Rosa*, 499 F. Supp. 3d 748, 750 (N.D. Cal. 2020)).  However, Mr. Johnson has

United States District Court
Northern District of California

1  pointed to no evidence that could create a material dispute of fact as to whether Chief Garcia or

2  another official with final policy-making authority was aware that Officer Adgar had fired a 40mm

3  PIW that hit Mr. Johnson, and made a "conscious, affirmative choice" to ratify the conduct.  *See*

4  Opp'n 31; *see also Whiting v. City of San Jose*, No. 21-cv-05248, 2022 WL 2714968, at *7 (N.D.

5  Cal. July 13, 2022) (finding mere failure to discipline or reprimand officers based on statistical

6  evidence of numerous use-of-force complaints failed to create triable issue of fact); *Estate of*

7  *Adomako*, No. 17-cv-06386, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police

8  department's 'mere failure to discipline its officers does not amount to ratification of their

9  allegedly unconstitutional actions.'") (quoting *Sheehan v. City & County of San Francisco*, 743

10  F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part*, *cert. dismissed in part*, 575 U.S. 600 (2015)).

11       Accordingly, the Court will grant summary judgment on this ground.

12       **C.       State Law Claims (Bane Act, Battery, Negligence)**

13       Defendants also move for summary judgment on Mr. Johnson's three state law claims—

14  *i.e.*, violation of the Bane Act; battery; and negligence—all of which are brought against both

15  Officer Adgar and the City.  *See* Mot. 24–25; SAC ¶¶ 83–98.  The Court addresses each in turn.

16            **1.       Bane Act**

17       Under the Bane Act, a plaintiff can seek damages "if a person or persons, whether or not

18  acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by

19  threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals

20  of rights secured by the Constitution or laws of the United States, or of the rights secured by the

21  Constitution or laws of this state."  Cal. Civ. Code § 52.1(b)–(c).  Thus, a Bane Act claim has the

22  same elements as an excessive force claim under the Fourth Amendment, with the additional

23  requirement that the defendant intended to interfere with a plaintiff's constitutional rights.  *See*

24  *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).[4]  The intent requirement

25  does not require that the defendant have been "thinking in constitutional *or legal terms* at the time

26

27  _____

[4] Unlike a § 1983 claim, however, "municipalities can be liable for Bane Act violations by their
employees under the doctrine of *respondeat superior*."  *Sanderlin*, 2023 WL 2562400, at *19

28  (citing *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002)).  Accordingly, the City is
a proper defendant here.

1    of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a

2    specific intent to deprive that person of those rights." *Id.* (quoting *United States v. Reese*, 2 F.3d

3    870, 885 (9th Cir. 1993)). "Rather, the jury must find that the defendants 'intended not only the

4    force, but its unreasonableness, its character as "more than necessary under the circumstances."'"

5    *Id.* (quoting *Reese*, 2 F.3d at 885).

6         Defendants argue that Mr. Johnson cannot meet the Bane Act's intent requirement because

7    he cannot show that Officer Adgar intentionally fired the 40mm PIW at Mr. Johnson, or that

8    Officer Adgar specifically intended to violate the law.  *See* Mot. 24.  Mr. Johnson argues that a

9    reasonable jury might conclude on the present record that Officer Adar acted with reckless

10   disregard for his constitutional rights.  *See* Opp'n 32.  The Court agrees that Mr. Johnson has

11   established a triable issue of fact as to whether Officer Adgar evinced reckless disregard for Mr.

12   Johnson's constitutional rights for the same reasons it denied summary judgment based on

13   qualified immunity—that is, because there is a material issue of fact as to whether Mr. Johnson

14   had a clearly established right to be free from the force Officer Adgar is alleged to have inflicted,

15   there is a related issue of fact as to whether Officer Adgar struck Mr. Johnson with a 40mm PIW

16   and thereby recklessly disregarded that clearly established right.  *See NAACP of San Jose/Silicon*

17   *Valley*, 223 WL 4983161, at \*19 (denying summary judgment on Bane Act claim arising out of

18   PIW use at the May 29 and May 30 protests on the basis that plaintiffs could show reckless

19   disregard for their constitutional rights); *cf. Sanderlin*, 2023 WL 2562400, at \*19 (granting

20   summary judgment on Bane Act claim where plaintiff did not raise reckless disregard theory of

21   intent).

22        For this reason, the Court will deny Defendants' motion for summary judgment on this

23   ground.

24              **2.    Battery**

25        Defendants argue that Mr. Johnson's battery claim fails because it requires proof of Officer

26   Adgar's intent to use force against Mr. Johnson.  *See* Mot. 24.  For the reasons stated both above

27   and in the Court's discussion of Defendants' qualified immunity arguments, *see supra*, at Parts

28   IV(A)(2)(c), IV(C)(1), the Court finds Mr. Johnson has shown a genuine issue of fact as to Officer

United States District Court
Northern District of California

1   Adgar's intent, and will deny summary judgment on this ground.

2             **3.       Negligence**

3          Lastly, Defendants seek summary judgment on Mr. Johnson's negligence claim.  *See* Mot.

4   24–25.  Their argument is entirely predicated on the narrative that Officer Adgar struck Mr.

5   Johnson—if at all—inadvertently, while attempting to exert reasonable force against an individual

6   who had thrown a dangerous object at police officers.  *See id.*  Because the Court has found that

7   there exists a triable issue of fact as to whether Officer Adgar intended to strike a specific

8   individual, which would make Mr. Johnson a bystander, *see supra*, at Parts IV(A)(2)(a)–(b), it will

9   deny summary judgment on this ground.

10  **V.    ORDER**

11         For the foregoing reasons, the Court hereby ORDERS as follows:

12        (1) Defendants' motion for summary judgment on Mr. Johnson's § 1983 claim against

13             Officer Adgar for the alleged violation of his Fourth Amendment rights is

14             DENIED;

15        (2) Defendants' motion for summary judgment on Mr. Johnson's § 1983 claim against

16             Officer Adgar for the alleged violation of his First Amendment rights is DENIED;

17        (3) Defendants' motion for summary judgment on Mr. Johnson's § 1983 claims against

18             the City under *Monell* for the alleged violations of his First and Fourth Amendment

19             rights is DENIED with respect to the theory of an alleged custom or practice of

20             excessive force and GRANTED with respect to the theories of the City's failure to

21             supervise or train and its ratification of unconstitutional policies; and

22        (4) Defendants' motion for summary judgment on Mr. Johnson's claims under

23             California law for violation of the Bane Act, battery, and negligence is DENIED.

24        **IT IS SO ORDERED.**

25  Dated: November 13, 2023

26

27

28                              Beth Labson Freeman
                            United States District Judge