UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KYLE JOHNSON,

        Plaintiff,

v.

CITY OF SAN JOSE, et al.,

        Defendants.

Case No. 5:21-cv-01849-BLF

**ORDER RE: MOTIONS *IN LIMINE***

[Re: ECF Nos. 160, 161, 162, 163, 164, 165]

This is a civil rights action under Section 1983, the Bane Act, Cal. Civ. Code §§ 52, 52.1, and California common law, brought by Plaintiff Kyle Johnson ("Plaintiff" or "Johnson") against the City of San Jose and San Jose Police Officer James Adgar (collectively, "Defendants"). Mr. Johnson brings suit for injuries he sustained when he was struck in the leg by a projectile during a May 30, 2020 civil rights demonstration in response to the murder of George Floyd by Minneapolis police officer Derek Chauvin.

The Court held the Final Pretrial Conference in this case on October 31, 2024, during which the Court issued oral rulings on the Parties' motions *in limine*. *See* Motions, ECF Nos. 160–65. The Court's rulings on the motions *in limine* are summarized as follows.

**I.     PLAINTIFF'S MOTIONS *IN LIMINE***

    **A. Plaintiff's Motion *in Limine* No. 1 to Exclude the Use or Admission of Evidence Relating to Defendant James Adgar's Character or Reputation**

In his first motion *in limine*, Plaintiff asks the Court to exclude evidence relating to Officer Adgar's character or reputation. *See* Plaintiff's MIL No. 1, ECF No. 163. Plaintiff anticipates that Officer Adgar "may seek to introduce evidence . . . relate[d] to his certifications and conduct as a police officer." *Id.* at 3. Plaintiff seeks to exclude such evidence on two bases: First, Plaintiff

argues that it would be "improper propensity evidence" under Federal Rule of Evidence 404 if used to show how Officer Adgar likely behaved on the night of the events that form the basis for this lawsuit. *Id.* at 3–4. Plaintiff argues that the exception to Federal Rule of Evidence 404 that character evidence may be admitted where "a person's character or character trait is an essential element of a charge, claim, or defense," Fed. R. Evid. 405(b), does not apply in this case because Officer Adgar's character is not an essential element of Mr. Johnson's claims, ECF No. 163 at 4–5. Second, Plaintiff argues that evidence of Officer Adgar's character is unduly prejudicial under Federal Rule of Evidence 403, because certifications and other such evidence might confuse or mislead the jury. *Id.* at 5.

In their Opposition, Defendants accept that character evidence is generally inadmissible in civil rights cases. *See* Opp. to Plaintiff's MIL No. 1, ECF No. 168. However, Defendants say that Plaintiff's motion improperly seeks to exclude evidence of Officer Adgar's police officer training, which they argue is "not evidence of a reputation, nor evidence of an opinion about the person, nor a specific instance of conduct reflecting that person's character." *Id.* at 2.

Plaintiff and Defendants are correct that "[c]haracter evidence is normally not admissible in a civil rights case," *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993), when offered to "prove that on a particular occasion the person acted in accordance with the character or trait," Fed. R. Evid. 404(a)(1). And Defendants are also correct that, even when admissible, character evidence will generally come in through "testimony about the person's reputation or by testimony in the form of an opinion;" if character or a character trait is an "essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(a)–(b). The Court will therefore GRANT IN PART the motion *in limine* insofar as it seeks to exclude evidence of Officer Adgar's character that Defendants may intend to use to show that Officer Adgar acted in accordance with a particular character trait on the evening of May 30, 2020. However, the general request to exclude any evidence of Officer Adgar's training or certifications is DENIED, as such evidence is not impermissible character evidence.

2

**B. Plaintiff's Motion *in Limine* No. 2 to Exclude Evidence or Argument Regarding Any Dispersal Orders Issued on May 30, 2020, and Plaintiff's Alleged Violations of Such Orders**

In his second motion *in limine*, Plaintiff seeks to exclude evidence or argument regarding any dispersal order(s) issued on May 30, 2020 or any allegation of Plaintiff's failure to comply with such dispersal orders. *See* Plaintiff's MIL No. 2, ECF No. 164. Plaintiff only specifically discusses one dispersal order, which was broadcast at approximately 9:19 p.m., but seeks to exclude mention of all dispersal orders issued on May 30, 2020.

Plaintiff argues that such evidence should be excluded because it is irrelevant and because it is unfairly prejudicial. *Id.* at 2–6; *see* Fed. R. Evid. 402, 403. First, Plaintiff argues that evidence of any dispersal order is not factually relevant, as Plaintiff did not personally hear it: the dispersal order issued prior to Plaintiff being struck by a foam baton was at 9:19 p.m., but Plaintiff states that he did not arrive at the protest location until 9:53 p.m. ECF No. 164 at 3. Second, Plaintiff states that evidence of dispersal orders is not relevant to resolution of Defendants' liability under the First Amendment. Plaintiff offers multiple arguments on this issue, including (1) that he was a peaceful protestor and was therefore engaged in constitutionally protected activity regardless of the dispersal order, (2) that shooting of rubber bullets at peaceful protestors has a chilling effect on free speech, and (3) that "indiscriminate use of force against peaceful protestors leads to the inference that the protected activity was a substantial or motivating factor in the defendant's conduct," regardless of any dispersal order. *Id.* at 4. Third, Plaintiff argues that the dispersal order is not necessary to resolve Defendants' liability under the Fourth Amendment, because failure to comply with a lawful order, without more, does not warrant use of serious force. *Id.* at 3, 5. Likewise, Plaintiff argues that a general dispersal order "cannot displace or substitute a specific warning by the police." *Id.* at 5. Finally, Plaintiff contends that evidence of a dispersal order would mislead the jury and result in an improper inference that Plaintiff himself was engaged in illegal conduct. *Id.* at 6.

In response, Defendants first argue that evidence of a dispersal order is relevant to the question of whether Plaintiff was engaged in lawful First Amendment conduct. *See* Opp. to Plaintiff's MIL No. 2, ECF No. 169 at 2. Defendants state that this issue is determined not with

3

reference to whether Plaintiff's *own* actions were peaceful, but rather with reference to whether the overall protest had been lawfully dispersed. If so, Plaintiff was in violation of California Penal Code § 409 ("Every person remaining present at the place of any . . . unlawful assembly, after the same has been lawfully warned to disperse . . . is guilty of a misdemeanor."). *Id.* at 2–3. Defendants' second point is that evidence of a dispersal order is relevant to the *Graham v. Connor*, 490 U.S. 386 (1989), analysis regarding the reasonableness of a police officer's use of force. *Id.* at 3. Finally, Defendants argue that Plaintiff put the existence of a dispersal order into dispute, by alleging that the San Jose Police Department "failed to give clear . . . warnings sufficient to put demonstrators on notice" of their duty to disperse. *Id.* (quoting Pl.'s 2d Am. Compl., ECF No. 73, ¶ 18).

The Court finds that evidence and argument as to any dispersal order issued on May 30, 2020—up to the moment that Officer Adgar fired the 40mm foam baton that allegedly struck Plaintiff—is relevant. First, regarding the First Amendment claim, Plaintiff is "required to show that [he was] engaged in a constitutionally protected activity, the [] Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and the protected activity was a substantial or motivating factor in the [] Defendants' conduct." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). Evidence of a dispersal order is relevant to the first and third elements of this claim: the dispersal order evidence may help determine (1) whether Plaintiff was participating in a lawful protest, and/or (2) whether there were other factors motivating Defendants' conduct.

Plaintiff's cited case law to the contrary is not on point. As Defendants point out, *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996), addresses a different issue; namely, whether lawful First Amendment activity may be barred "as a prophylactic measure" before any violent conduct has arisen simply because it is related to the same subject matter as a prior violent protest. *See* 110 F.3d at 1372. That is not what happened here, since it is not disputed that some violence had broken out in the vicinity of City Hall at the time that dispersal orders were issued on May 30, 2020. At the same time, Plaintiff offers various cases for the propositions that "indiscriminate use

4

of force against peaceful protestors leads to the inference that the protected activity was a substantial or motivating factor in the defendant's conduct" regardless of any dispersal order and that such indiscriminate use of force has a chilling effect on free speech. Plaintiff says that these cases render the dispersal orders irrelevant. But this argument *presumes* precisely the fact that Plaintiff seeks to prove: that Officer Adgar was using force indiscriminately against peaceful protestors. Defendants dispute this theory, and the Court cannot exclude evidence of dispersal orders based on an unproven assumption that Plaintiff will ultimately prevail on his theory.

Likewise, the Court concludes that evidence and argument related to any dispersal order is relevant to the resolution of Plaintiff's Fourth Amendment claim. Under the *Graham* factors analysis, the finder of fact must consider the "perspective of a reasonable officer on the scene," asking whether his use of force was "'objectively reasonable' in light of the facts and circumstances confronting [him]." 490 U.S. at 396–97. Plaintiff's assertion that failure to comply with a dispersal order, standing alone, will not likely result in a finding of reasonableness is beside the point. The same is true of Plaintiff's argument that a dispersal order is not a substitute for a specific warning of forthcoming serious force. Defendants seek to present evidence of the dispersal order as one fact among many informing the totality of the circumstances facing Officer Adgar on the night of May 30, 2020. While other facts, such as the existence of any specific warning, may *also* be relevant to the inquiry, that does not render evidence of a general dispersal order irrelevant to the totality of the circumstances analysis under *Graham*.

Finally, the Court believes that the probative value of this evidence outweighs the risk of any prejudicial effect. As discussed above, evidence of dispersal orders is highly relevant to various elements of, and defenses to, Plaintiff's claims. While the Court acknowledges that there is some risk of prejudice—i.e., that the jury may form the impression that Plaintiff himself was engaged in violent conduct even if no specific evidence of violence by Plaintiff was presented—this risk of prejudice can be addressed through countervailing evidence of Plaintiff's actions that evening, including Plaintiff's own testimony and the body camera footage.

In sum, Plaintiff's request to exclude evidence or argument regarding any dispersal order(s) issued on May 30, 2020 or any allegation of Plaintiff's failure to comply with such

dispersal orders is DENIED.

### C. Plaintiff's Motion *in Limine* No. 3 to Preclude Admission of Images and Other Media Evidence Depicting Violence, Officer Injuries, and Property Damage on May 29–30

In his third motion *in limine*, Plaintiff seeks an order excluding "images and other media evidence depicting violence, officer injuries[,] and property damage." Plaintiff's MIL No. 3, ECF No. 165 at 2. First, Plaintiff argues that such imagery is irrelevant, because Mr. Johnson did not participate in any violent activities on the night of May 30, 2020. *Id.* at 4. While Plaintiff accepts that an officer's conduct may be assessed for reasonableness based on the facts and circumstances confronting the officer at the time, Plaintiff says that the conduct of others in a crowd setting should not be considered as part of this assessment. *Id.* Second, Plaintiff argues that such images are excludable under Federal Rule of Evidence 403, because presentation of the media might lead the jury to associate Plaintiff with violent or criminal activities. *Id.* at 5.

Defendants respond that factfinders must judge the reasonableness of an officer's use of force by looking at all of the facts and circumstances of a given case, including the overall situation surrounding the use of force. *See* Opp. to Plaintiff's MIL No. 3, ECF No. 170. In addition, Defendants argue that the events Officer Adgar observed on May 29 and May 30, 2020, prior to the time at which Plaintiff was injured, are relevant to his defense, because they show his "intent and motive surrounding his use of a 40mm projectile impact weapon." *Id.* at 3. In particular, Defendants point out that Plaintiff's First Amendment retaliation claim requires Plaintiff to show that his First Amendment activity "was a substantial or motivating factor in the defendant's conduct." *Id.* at 4 (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). Defendants similarly argue that the evidence is relevant to the "specific intent" element of Plaintiff's Bane Act claim. *Id.* at 5. Defendants say that they need to be able to present evidence of the general circumstances surrounding the protest to be able to establish defenses to these claims.

The Court concludes that it must partially defer its ruling on this motion *in limine*. Regarding Plaintiff's Fourth Amendment claim, the standard laid out in *Graham v. Connor*, 490 U.S. 386 (1989), governs the analysis of whether a police officer's use of force was "'objectively

reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. "[R]easonableness . . . is assessed by balancing the 'nature and quality of the intrusion' on [the plaintiff's] rights against the government's countervailing interest in the force used," taking into consideration the threat posed by the plaintiff to the officer, whether the plaintiff was resisting or attempting to evade arrest, and the "severity of the crime at issue." *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022), *cert. denied sub nom. Cnty. of Riverside v. Est. of Najera-Aguirre*, 143 S. Ct. 426 (2022). Contrary to Plaintiff's arguments, though, the reasonableness inquiry may also consider the surrounding circumstances and actions of others associated with person against whom force is ultimately used. *See Nelson v. City of Davis*, 685 F.3d 867, 880–81 (9th Cir. 2012) (considering the threat posed by the plaintiff's associates as well as the plaintiff himself); *Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011) ("While Jayzel herself did not pose any threat to the officers' safety, we must also consider the danger that the overall situation posed to the officers' safety and what effect that has on the reasonableness of the officers' actions.").

In addition, while Plaintiff may be correct that Officer Adgar's intent has no bearing upon the *Graham* analysis, it is certainly relevant to the analyses on Plaintiff's First Amendment and Bane Act claims. If an officer's "animus was not a but-for cause of the adverse action, [then] there was no violation of the plaintiff's constitutional rights." *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022). Thus, there is no First Amendment violation where "the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech," *id.*, so it is important to Defendants' defense in this case to be able to present circumstantial evidence demonstrating the reason(s) that the accused action was taken, *see Hines v. Gomez*, 108 F.3d 265, 267–68 (9th Cir. 1997). And under the Bane Act, "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the [plaintiff's] right[s]." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Therefore, the challenged footage is relevant to Defendants' ability to attempt to defend against Plaintiff's showing of any specific intent to violate his rights.

However, the Court also agrees with Plaintiff's argument that presentation of imagery and footage depicting violence, officer injuries, and property damage related to the May 29 and May 30, 2020 protests may prejudice the jury. Plaintiff's cited authority, *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996), is not on point, because the footage here is not "unusually graphic." *Id.* at 356. Nor is there any indication that this footage is an effort to make ethnic generalizations, although the Court agrees with Plaintiff that such an effort would be impermissible. *See United States v. Nobari*, 574 F.3d 1065, 1073–76 (9th Cir. 2009). But some of the footage of protest activities at Highway 101 on May 29 is inflammatory, and at the same time, it is of very limited relevance to the totality of the circumstances analysis regarding Officer Adgar's conduct at City Hall on the evening of May 30. Moreover, any media of earlier protest events is only relevant insofar as Officer Adgar was actually aware of it by that evening. And while it may be important for Defendants to be able to illustrate the totality of the circumstances using *some* media, presenting many such example clips would become cumulative.

Because the Court has not been informed specifically of which media clips Defendants intend to present at trial, and has likewise not received a declaration confirming that Officer Adgar was aware of all events portrayed in those clips, the Court will DEFER its ruling on most of the media addressed in this motion. Defendants are ORDERED to submit a list of the media clips they plan to introduce at trial along with a supporting declaration addressing Officer Adgar's awareness of those materials by December 2, 2024. In the meantime, the Court GRANTS IN PART the motion; the following materials will be excluded, as will all editorial audio accompanying media introduced at trial:

| | |
|---|---|
| 5/29 Highway 101 ABC7 Clip | SJ405878 |
| 5/29 Highway 101 Aerial ABC7 Clip at 02:22–03:24 | SJ405921 |
| 5/29 Highway 101 East San Jose Clip | SJ405968 |
| Officer injury photos | SJ404924–SJ404928 |
| 5/29 UPS Looting Clip | SJ405897 |

8

## II. DEFENDANTS' MOTIONS *IN LIMINE*

### A. Defendants' Motion *in Limine* No. 1 to Exclude Evidence and Argument About the Use of Tools and Tactics Other Than 40mm Foam Projectiles

In Defendants' first motion *in limine*, they seek to exclude evidence about "enforcement tools and tactics San Jose police officers used during the George Floyd protests other than 40mm foam batons," including "37mm projectiles, flash bangs, tear gas, or chemical agents." Defendants' MIL No. 1, ECF No. 160 at 1.  Defendants argue that such evidence is excludable under Federal Rule of Evidence 403 because its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See id.* at 3.  Defendants point to Plaintiff's opposition to their summary judgment motion to suggest that Plaintiff will use such evidence in an effort to show that the San Jose Police Department's response to the George Floyd protests was brutal and undisciplined, and that such an effort would improperly confuse, prejudice, or mislead the jury by causing the jury to conflate evidence of other officers' actions with the specific question of Office Adgar's liability. *See id.* at 4.  Additionally, Defendants argue that Plaintiff's *Monell* claim is insufficient to render this evidence admissible, because the evidence will not go to the question of whether Officer Adgar acted because of a City custom or practice. *See id.*

Plaintiff responds that the targeted evidence is critical to his *Monell* claim, because it is necessary to show the City's custom or practice of using excessive force to respond to the George Floyd protests. *See* Opp. to Defendants' MIL No. 1, ECF No. 171.  Because prevailing on a custom theory of *Monell* liability necessitates a showing of a "widespread" and "well settled" practice, Plaintiff argues that it would be "severely detrimental" and would make it nearly impossible to prove such a custom without being able to present evidence related to other tools and tactics that were used during the protests. *See id.* at 4.  Likewise, Plaintiff argues that the "total level of police violence" is relevant to the analysis of his Bane Act and Fourth Amendment claims. *Id.* at 5–6.

The Court generally agrees with Plaintiff's argument that, in order to advance his custom or practice theory of *Monell* liability, it is important that Plaintiff be able to present evidence going

9

to whether such a widespread practice existed. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) ("[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that . . . is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" (citation omitted)); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). The other tools and tactics in use at the George Floyd protests are probative of that question. However, the Court is unable to rule on this motion without knowing specifically what evidence Plaintiff plans to introduce, including whether Plaintiff seeks to introduce any evidence of Defendants' conduct from prior to May 29, 2020. Therefore, the Court will DEFER its ruling on this motion. Plaintiff is ORDERED to submit a list of the evidence related to Defendants' MIL No. 1 that he plans to introduce at trial by December 2, 2024.

**B. Defendants' Motion *in Limine* No. 2 to Exclude Expert Opinion Testimony and Animation of Events**

In Defendants' second motion *in limine*, they seek to exclude "testimony, exhibits including demonstrative exhibits, and argument in the form of, and based on, expert opinion about an ultimate issue in the case . . . whether Of[ficer] Adgar fired the projectile that Plaintiff alleges caused [his] injury." Defendants' MIL No. 2, ECF No. 161 at 1. Defendants argue that the expert opinion Plaintiff hopes to present in this case "exceeds the boundaries this court has set when the opinion purports to tell jurors what a video shows." *Id.* at 2 (citing *Zeen v. Cnty. of Sonoma*, No. 17-cv-02056, 2018 WL 3769867 (N.D. Cal. Aug. 9, 2018), and *Gomez v. Fachko*, No. 19-cv-05266, 2021 WL 5630623 (N.D. Cal. Dec. 1, 2021)). Those boundaries, Defendants say, reflect valid concerns that a jury may be biased by an animated video and testimony about it. *See id.* at 2–3.

Plaintiff responds that, under Federal Rule of Evidence 702, an expert witness may offer testimony that will assist the trier of fact in determining a fact in issue, including testimony regarding an ultimate issue in the case. *See* Opp. to Defendants' MIL No. 2, ECF No. 172. Plaintiff argues that his expert, Mr. Fries, has relied on his knowledge and skills to create a video reconstruction of the events underlying this lawsuit, and that this demonstrative and his testimony are helpful in summarizing extensive video footage. *Id.* at 4. Furthermore, Plaintiff argues that

10

Mr. Fries's methods are reliable, *id.* at 4–5, and that Defendants' motion misrepresents what occurred in the *Gomez* case, in which Mr. Fries's testimony about his animated video was excluded, *id.* at 5. Plaintiff says that the testimony was excluded in *Gomez* based on purported "inconsistent statements" about which software he used to prepare the animation, but that no such inconsistent statements exist here. *Id.* at 5–6. Finally, Plaintiff argues that excluding Mr. Fries's testimony and accompanying exhibits will limit Plaintiff's ability to present his case. *Id.* at 6.

The Court will GRANT IN PART AND DEFER IN PART Defendants' motion. While Plaintiff is correct that an expert may testify as to their opinion about an ultimate fact in the case, *see* Fed. R. Evid. 704(a), there is some question as to whether Plaintiff's expert is competent to testify to the specific fact of whether Officer Adgar struck Plaintiff Johnson with his 40mm foam baton. Defendants have raised a qualification objection regarding Plaintiff's expert's knowledge of the capabilities of the 40mm foam baton device accused of striking Plaintiff on May 30, 2020. Since that issue was not fully briefed, the Court will not rule on Defendants' objection now, but it is preserved for Defendants to raise at trial.

However, the animated video constructed by Plaintiff's expert SHALL be excluded. The fact that presenting such a video might make it easier for Plaintiff to persuade the jury to agree with his theory does not mean that excluding the video "prejudices" Plaintiff's case. To the contrary, the Court finds that animated video reconstructions of events such as those at the heart of this case are likely to confuse or mislead the jury by over-simplifying a complex series of events. Mr. Fries may present his annotations and enhancements of the *actual* video footage from that night, but he may not present or describe his animated reconstruction.

### C. Defendants' Motion *in Limine* No. 3 to Exclude Evidence of Allegations and Complaints by Other Protest Participants

In Defendants' third motion *in limine*, they seek to exclude "evidence of other alleged wrongful acts, complaints or investigations." Defendants' MIL No. 3, ECF No. 162 at 1. Defendants argue that complaints about police officer misconduct are improper character evidence under Federal Rule of Evidence 404(b). *Id.* at 2. In addition, Defendants appear to argue that such evidence is excludable under Federal Rule of Evidence 403, because it would "substantially

11

expand the time required to try the case." *Id.*

Plaintiff responds that Defendants' third motion *in limine* is vague and overbroad, because it seeks to exclude three general categories of evidence "without specifying the type, timing, context, or even definition of such evidence." Opp. to Defendants' MIL No. 3, ECF No. 173 at 2. Furthermore, Plaintiff argues that evidence of complaints by other protestors is relevant to show a "pattern or practice of excessive force" by the San Jose Police Department, which is crucial to Plaintiff's *Monell* claims. *Id.* at 3. Likewise, Plaintiff argues that evidence of other lawsuits that arose out of the George Floyd protests in San Jose is important to the *Monell* claim. *Id.* at 4. This is why Plaintiff argues that the evidence should not be excluded under Federal Rule of Evidence 404(b): rather than being offered as propensity evidence, it will be offered in an effort to demonstrate the City's custom and practice of using excessive force during the George Floyd protests.

The Court agrees with Plaintiff that this motion as currently drafted is vague and overbroad. The Court is unable to rule on this motion without knowing specifically what evidence Plaintiff plans to introduce. Therefore, the Court will DEFER its ruling on this motion. Plaintiff is ORDERED to submit a list of the evidence related to Defendants' MIL No. 3 that he plans to introduce at trial by December 2, 2024.

### III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's first motion *in limine* is GRANTED IN PART. Defendants may not present evidence of Officer Adgar's character or character traits for the purpose of establishing that he acted in accordance with such traits on May 30, 2020. However, Plaintiff's request to exclude all evidence of Officer Adgar's training and certifications is DENIED.
2. Plaintiff's second motion *in limine* is DENIED.
3. Plaintiff's third motion *in limine* is GRANTED IN PART AND DEFERRED IN PART pending submission of Defendants' intended evidence by December 2, 2024. The materials identified by Bates numbers SJ405878, SJ405921, SJ405968, SJ404924–

SJ404928, and SJ405897 are EXCLUDED.

4. Defendants' first motion *in limine* is DEFERRED pending submission of Plaintiff's intended evidence by December 2, 2024.

5. Defendants' second motion *in limine* is GRANTED IN PART AND DEFERRED IN PART. Plaintiff may not present or describe the animated video reconstruction created by Mr. Fries. Defendants' objection regarding Mr. Fries's competency to testify about the ultimate fact of whether Officer Adgar struck Plaintiff Johnson with his 40mm foam baton is preserved, and Defendants may raise it during trial.

6. Defendants' third motion *in limine* is DEFERRED pending submission of Plaintiff's intended evidence by December 2, 2024.

**IT IS SO ORDERED.**

Dated: November 6, 2024

_____
BETH LABSON FREEMAN
United States District Judge

13